## Warburton *v.* John Wanamaker Philadelphia, Appellant, et al.

Argued January 6, 1938.   Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Earl G. Harrison,* with him *Harry E. Sprogell* and *Saul, Ewing, Remick & Saul,* for appellant.

*David J. Smyth,* with him *Marshall A. Coyne,* for appellee.

*Henry S. Drinker, Jr.,* of *Drinker, Biddle & Reath,* for trustee.

OPINION BY MR. JUSTICE SCHAFFER, January 24, 1938:

The question here involved is whether complainant is entitled to receive payments at the rate of six per cent per annum on the 10,000 shares of stock of the corporation "John Wanamaker Philadelphia," held in trust for her, or, whether she is entitled to receive such payments only when the directors of the corporation declare the payments as dividends. A majority of the court below decided that payments at the rate named were due to complainant, notwithstanding they had not been declared as dividends. From the decree directing payment to her of the sum of $190,631.16, the corporation appeals.

We think the view of the case taken by appellant's able advocate who made the oral argument before us is a too restricted one. He would confine consideration to whether, strictly speaking, the stock is one carrying cumulative or non-cumulative dividends, disregarding almost entirely the parties to the transaction of its issue and the fact of its being placed in trust for complainant and her sister (now deceased) by their father, John Wanamaker, and the obvious purpose which he had in mind in so placing it for their benefit. The argument made blots out of the picture the relation of John Wanamaker, the individual, to the corporation, John Wanamaker Philadelphia, which might well be considered his incorporated business self.

While the case is presented entirely on documents, its human side is not thereby entirely obliterated. As every

one knows, John Wanamaker was one of the country's greatest merchants. At the time of this transaction in December, 1920, he was advanced in years. He practically owned the corporation bearing his name since he had 73,995 shares out of a total issue of 75,000, 1,000 shares being held by his son Rodman and 5 shares by William L. Nevin, who was his attorney and associate in the business, being secretary of the corporation.

The corporation was indebted to John Wanamaker in a sum exceeding $1,000,000. He had evidently decided to turn over the great business which he had created and carried on to his son Rodman. To accomplish this, contemporaneously with the transaction we are considering, he made a gift to his son of all the common shares which he, the father, owned; they undoubtedly were of great value. In addition to his son, he had two other children, the complainant, Mary B. Warburton, and Elizabeth W. MacLeod, who died childless subsequent to his decease. It is unmistakably disclosed by the papers before us that he wished to provide a certain, secured income for his daughters. Controlling the corporation as he did, he concluded to do this by transmuting the million dollar indebtedness of the corporation to him into stock with a fixed annual payment thereon of six per cent in the nature of a charge against the earnings of the corporation. Proper proceedings were carried on by him, his son and Mr. Nevin, which resulted in the issue of a single certificate for 10,000 shares of so-called preferred stock. This certificate was issued in the name of Fidelity Trust Company, Trustee, and discloses that the capital stock of the corporation was $8,500,000, $7,500,000 of common stock and $1,000,000 of preferred. It recites that "the holder of these shares of preferred capital stock, as well as the beneficiaries thereunder, shall hold the same subject to designations, rights, privileges, limitations, preferences and voting powers, as follows." Then follows a recital of the resolution of the stockholders, that the capital stock of the corporation

be increased from $7,500,000 to $8,500,000, that the additional capital stock to the amount of $1,000,000 shall be preferred capital stock and "said preferred capital stock shall receive annual dividends of six (6) per cent, and not more to be declared by the board of directors, at the times and under the conditions referred to under section (d), but shall participate in no dividends in excess of six (6) per cent per annum. Said preferred capital stock shall not participate in the good will of the business of John Wanamaker Philadelphia." The certificate states that the stock shall have no voting power, that the recipient "of the *interest** to be derived therefrom" shall not have any interest, direct or indirect, in the business of John Wanamaker Philadelphia, or any corporations connected therewith, beyond the enjoyment of the amount of dividends declared on said preferred capital stock, that the holders of the stock shall have no right to an accounting, inspection, or other privilege, against the corporation at any time, or any direction, control or suggestion in the management of the business of the corporation. It then provides "(d) After six months from demise of John Wanamaker the within stock shall *begin to bear interest,* and, after one year from the date thereof, the first dividend shall be declared thereon. On one year's written notice, after date of the first dividends, the corporation shall purchase at One hundred and ten ($110.00) Dollars a share, all, or such part, of said preferred stock, not less than Fifty thousand ($50,000.00) Dollars per annum, as it shall elect, and shall continue such purchase, at the end of each fiscal year of the business of John Wanamaker Philadelphia under said terms and conditions, until the entire issue of ten thousand (10,000) shares shall have been bought, at which time said preferred capital stock shall be delivered to John Wanamaker Philadelphia." The certificate contains the further provision that upon

---

* Wherever italics are used they are supplied.

dissolution, voluntary liquidation, or sale of all the property and assets of the corporation, the payment of the preferred capital stock shall be deferred to the payment of the common capital stock; after the common capital stock has been paid in full, at par, the preferred capital stock shall be paid in full, at par; after both the common capital stock and the preferred capital stock shall have been paid in full, at par, any remaining assets, either in cash or in property, shall be distributed pro rata among the holders of the common stock according to their respective holdings.

We hazard the observation that it is unlikely this certificate has its counterpart in any issue of stock ever made, and its so-called preference is a somewhat dubious one, unless it be in carrying a guaranteed 6% annual dividend.

The certificate was dated December 14, 1920, and on the day following John Wanamaker wrote a letter to the Fidelity Trust Company, named in the certificate as trustee, in which he said there had been issued by his corporation 10,000 shares of its preferred capital stock "in form as shown by the enclosed original certificate." The letter then states: "Said preferred capital stock shall receive annual dividends of six (6) per cent, and not more, to be declared by the Board of Directors, at the times and under the conditions referred to under section (d), but shall participate in no dividends in excess of six (6) per cent per annum. Said preferred capital stock shall not participate in the good-will of the business of John Wanamaker Philadelphia. This certificate is turned over to you, to be held by your company, in trust, for the following uses and purposes: To hold the stock, and income to be declared thereon, for the benefit of my daughters Mary B. Warburton and Elizabeth W. MacLeod, in equal shares. *As the interest* is declared, and paid by you, by action of the Board of Directors of John Wanamaker Philadelphia, it is to be divided equally, between my daughters, during their life-

time, *annually,* in semi-annual payments. The income is to be free from anticipation, assignment or hypothecation, and to be paid to each beneficiary upon their individual receipt. In the event of my daughter, Elizabeth W. MacLeod, dying, without issue, then the share she has received, during her lifetime, shall be paid over to my surviving daughter Mary B. Warburton. In the event of Elizabeth W. MacLeod leaving issue such issue to enjoy, equally, the income previously received by their parent. Should only one child survive them the entire income is to go to such surviving child. Upon the decease of my daughter, Mary B. Warburton, the income she received, during her life time, shall thereafter be for the joint benefit of her children, and the survivor. In the event of said stock, or any part thereof, being paid off, as provided for, under paragraph (d) upon the face of the certificate, the monies thus received shall be held by you, in trust, as above, and invested in legal securities, proceeds from which shall be semi-annually paid to the beneficiaries herein outlined, and, in the event of the decease of both of my daughters, for a period of five (5) years after the date thereof, at which time such principal amount, with any accrued interest thereon, not distributed, shall then be paid equally to the child or children, then surviving, of my said daughters, the child or children of any predeceased child or children, to equally enjoy the parents' share. In the event of the death of my daughters, without leaving issue, or the descendant of issue, then, in that event, the principal of said preferred capital stock to be paid over to Rodman Wanamaker, his heirs and assigns." Upon this letter is a notation of the acceptance of the trust by the Fidelity Trust Company.

Whatever any other document may say, it is clear to us that John Wanamaker, by this letter, and by the certificate of stock which he signed as president of the company, intended that his daughters should receive an annual payment which in the letter he described as inter-

est at 6% on $1,000,000 secured by the earnings and assets of the corporation.

One year after the death of John Wanamaker, the corporation paid a first dividend of 6% on the trusteed shares and these dividends were continued at regular semi-annual intervals until at a meeting of the board of directors on May 9, 1933, it was resolved that the dividend due June 12, 1933, be passed, because it had not been earned. Since that date and down to the institution of this proceeding, no dividends had been declared upon the preferred or common shares. It is conceded that since dividends upon the common shares, as well as upon the stock in question, were about to be resumed when this bill was filed, complainant had the right to commence the proceeding.

The argument of appellant, that Mrs. Warburton is entitled to only such dividends as were declared by the board of directors on the 10,000 shares of capital stock, and as in certain years no dividends on these shares were declared, she is not entitled to anything for these periods, is based upon the fact that in some of the preliminaries to the issue of the stock, it is described as non-cumulative. In their request to the directors of the corporation to call a stockholders' meeting to increase the capital stock, John Wanamaker, Rodman Wanamaker and Mr. Nevin (they themselves were the directors) stated that the additional stock was to be "6% non-cumulative preferred capital stock." The oath of the judges, who were the three stockholders, uses the words "6% non-cumulative preferred capital stock," as does the waiver of notice signed by the shareholders. The return of the judges designates it as "6% non-cumulative preferred capital stock" in one instance and elsewhere as "said preferred capital stock." The ballot cast by John Wanamaker calls it "6% non-cumulative preferred capital stock." The ballots cast by the other two stockholders are similar. But, in the resolutions adopted by the board of directors and subsequently adopted at

the shareholders' meeting the word "non-cumulative" is not used but the stock is referred to as "preferred capital stock." The return to the Secretary of the Commonwealth signed by John Wanamaker as president of the company calls it "preferred capital stock."

The argument presented for appellant amounts to this: That because in certain of the preliminary papers the word "non-cumulative" is used, this badges the stock when issued as of that character. We think this by no means follows, for the reason that John Wanamaker, in complete control of the corporation, as he was, could do what he did do in bringing about the actual issue of the stock, that is, issue it with the word "non-cumulative" out of the certificate.

It is significant that in the minutes of the meeting authorizing the issue of the stock it is stated "That ten thousand (10,000) shares of preferred capital stock of the corporation of John Wanamaker Philadelphia be issued to the Fidelity Trust Company, of the City of Philadelphia, *as directed by John Wanamaker*" and the president and treasurer "are hereby authorized and directed to execute a certificate of stock representing ten thousand (10,000) shares of preferred capital stock of John Wanamaker Philadelphia, in the name of Fidelity Trust Company, Trustee, and deliver said certificate to said Trustee, *in accordance with the terms and conditions of a letter of instruction from John Wanamaker.*"

Counsel bring to our attention such authorities as 11 Fletcher, Cyclopedia of Private Corporations, Permanent Edition, 1932, sec. 5295; *Boardman v. Lake Shore & M. S. Ry. Co.*, 84 N. Y. 157; *Continental Ins. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 290 Fed. 87; *Bailey v. Railroad Co.*, 84 U. S. 96; *St. John v. Erie Ry. Co.*, 89 U. S. 136; *Scott v. B. & O. R. R. Co.*, 93 Md. 475, 49 A. 327; *Rogers v. N. Y. & T. L. Co.*, 134 N. Y. 197, 32 N. E. 27, and other cases which may be said to be authority for the proposition that, under ordinary circumstances, the certificate of preferred stock is not the only

evidence of the contract, and that it must be read in connection with the provisions of the charter or articles of association and the vote or proceedings by or under which the shares were issued, and that the whole proceeding relating to the issue of the stock may be taken into consideration as constituting one and an entire transaction. We think under ordinary circumstances this may be true, but we are here not dealing with the ordinary transaction of a stock issue. Appellant's counsel state they have been unable to find any case in which the facts are similar to those in the present one. Taking the thought from their brief that "The clearly expressed and declared intention of Mr. Wanamaker in creating the issue should be permitted to govern," we are compelled to the conclusion, considering all the documents, and giving their proper weight to the words of the certificate, and to his letter creating the trust, that his intention was that the payments, "interest" as he called them and evidently thought of them, were to be due every year during the continuance of the trust, irrespective of whether the directors of the corporation declared dividends or not. We think the principle to which our attention is directed, adverted to in *McLean v. Pittsburgh Plate Glass Co.,* 159 Pa. 112, 28 A. 211, and *Jones v. Motor Sales Co.,* 322 Pa. 492, 185 A. 809, that the shareholders are bound to abide by the action of the board of directors in determining whether dividends shall be paid, and that their action is final unless fraud or abuse of discretion can be shown, does not govern in this case in the light of its peculiar circumstances. The provision in the certificate that dividends were not to be paid until a year after John Wanamaker's death in a degree takes the situation out of that ordinarily existing with capital stock.

Appellant's counsel recognize that the case turns on the question of John Wanamaker's intent in the transaction. When it came to completing the transaction by issuing the certificate of stock which he signed as presi-

dent of the company, and by his letter setting up the trust, he indicated that the payments provided for his daughters were to be made on an annual basis, and to our understanding it could not have been contemplated by him, considering the purpose he had in mind, to secure to them an annual income, that he would have put it in the power of the directors of the corporation by refusing to declare dividends to frustrate his purpose and intent. It should be borne in mind that this stock was issued to discharge a debt due by the corporation to John Wanamaker and that this indebtedness bore regularly accruing interest. "The meaning of the term 'annually' as applied to interest is not an undertaking to pay interest at the end of one year only, but to pay interest at the end of each and every year during a period of time, either fixed or contingent": *Sparhawk v. Wills,* 6 Gray 163. A corporation has the same power to issue stock providing for the payment of a certain rate of interest thereon when earned as it has to issue ordinary preferred stock: 11 Fletcher, Cyclopedia of Private Corporations, sec. 5313; *Miller v. Pittsburgh & Connellsville R. R. Co.,* 40 Pa. 237. In *Fidelity Trust Co. v. Lehigh Valley R. R. Co.,* 215 Pa. 610, 64 A. 829, where the question was whether the holders of preferred shares were entitled cumulatively to dividends from the time of issuance before the holders of the common stock were entitled to any dividends, it was held that in the absence of any specification to the contrary, the general rule is that preferred stock is entitled to arrears. " 'If a corporation has agreed or guaranteed that the holders of preferred stock shall be paid dividends at a certain rate per annum, and the profits at any time are insufficient to enable the company to perform its agreements, the arrears must be made up out of profits subsequently earned; and no dividends can be paid to the holders of the common shares until the preferred shareholders have been fully paid.' " (p. 615.) See also 1 Morawetz on Private Corporations, 2nd Ed., sec. 458; 2 Clark & Marshall, Pri-

vate Corporations, sec. 529d. In 1 Cook on Corporations, sec. 273, it is stated: "If preferred stock is issued without any mention of whether or not the dividends are cumulative, then the law makes them cumulative." *Englander v. Osborne,* 261 Pa. 366, 104 A. 614, is not authority for the proposition that in the absence of express provision for cumulative dividends, dividends on preferred stock are non-cumulative. In that case, the preferred shares were considered to be cumulative. The preferred stock received no dividends for a period of nine years and the corporation then declared a dividend of 54% on the preferred shares and an equal dividend on the common shares. The preferred shareholders brought a bill to enjoin the payment of an equal dividend to the common shareholders, contending that the preferred shareholders were entitled to share equally with the common shareholders on dividends in excess of 6% paid to the common shareholders. In stating (p. 369) "In the absence of agreement, express or implied, that dividends shall be cumulative, unpaid dividends in the past cannot be claimed" the expression is obiter dictum unless the court was speaking of the claim of the common shareholders for past dividends.

If appellant's contentions were to be sustained, then, by not declaring dividends on the preferred stock, the corporation could devote the money thus retained to retire the preferred stock, and the income provided for appellant could be used to pay off the principal of the stock. This we think could not have been contemplated by Mr. Wanamaker. It is not difficult to conclude that he provided the retirement figure of the stock at $110 per share, with the thought in mind that the increased figure above the par of the stock would aid in keeping up the income to his daughter at the figure he had in mind, if investments to be made with the principal would not return full 6%.

The decree is affirmed, costs to be paid by appellant.