**MENGEL CO., Inc., v. GLENN, Collector of Internal Revenue.**

**No. 471.**

District Court, W. D. Kentucky. Louisville Division.

Aug. 9, 1943.

Charles G. Middleton and Bullitt & Middleton, all of Louisville, Ky., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Edward First, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, U. S. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

The Mengel Company, a New Jersey corporation with its principal office in Louisville, Kentucky, filed this action against the Collector of Internal Revenue for the District of Kentucky to recover $18,127.33 with interest which it claims was erroneously assessed against it and paid by it under protest as a deficiency surtax on undistributed profits for the calendar year 1936. Claim for refund was duly filed and denied before the bringing of this action. All of the facts have been stipulated by the parties.

Prior to May, 1932, the plaintiff had outstanding 320,000 shares of no par value common stock which was carried on its books at a stated value of $25 per share or a total of $8,000,000. On May 4, 1932, this stated capital was reduced from $25 per share to $1 per share and the difference of $24 per share, aggregating $7,680,000 was transferred from Capital to Surplus on the books of the Company. The certificate of amendment to the plaintiff's charter making this change provided that the transfer of this $7,680,000 from Capital to Surplus was "upon the condition and subject to the proviso that no part of said amount may be utilized for the payment of dividends on either the preferred or common stock of this Company so long as it has bonds outstanding, and that no part of said amount be utilized for the payment of dividends on the common stock of this Company so long as it has preferred stock outstanding; * * *." On May 23, 1932, the plaintiff's by-laws were amended by adding to Article X thereof, dealing with dividends on preferred and common stock the following paragraph:

"Subject to the condition and proviso, however, that no part of the sum of $7,680,-000 transferred from Capital to Surplus, pursuant to Resolution duly adopted at the Stockholders' Meeting duly called and held on May 4th, 1932, amending the Certificate of Incorporation by changing the authorized Common Stock from No Par Value to the par value of One ($1.00) Dollar per share, and reducing the stated capital of the outstanding 320,000 shares of Common Stock from $25.00 per share on the books of the Company to One ($1.00) Dollar per share, may be utilized for the payment of dividends on either the Preferred or Common stock of this Company so long as it has bonds outstanding, and that no part of said amount may be utilized for the payment of dividends on the Common stock of this Company so long as the Company has Preferred stock outstanding."

In 1922 the plaintiff had issued bonds in the amount of $5,000,000 secured by an indenture dated March 1, 1922. These bonds were payable in specified annual installments with a balance of $3,000,000 principal amount falling due on March 1, 1934. In 1934 the plaintiff found it necessary to secure an extension of this maturity date for five years and accordingly requested the bondholders to agree to such extension. As consideration each bondholder was offered either an immediate 2% cash premium or an option to convert the bonds into common stock at specified times during the following five years at fixed conversion rates. A sufficient number of the bondholders agreed to the extension to make the plan operative and a supplemental indenture dated as of March 1, 1934, was executed securing the bonds as extended.

For the years 1932 to 1936 the plaintiff maintained two surplus accounts called Capital Surplus and Earned Surplus (deficit). The Capital Surplus account created in 1932 by the transfer of $7,680,000 from the capital account remained constant through these five years except for an increase of $471.50 in 1934, which arose out of a sale of stock over the stated value of $1.00 per share per value. The Earned Surplus (deficit) started in 1932 with a debit balance of $121,360.51, which deficit was increased in subsequent years by operating and other losses until December 31, 1935, when it totalled $4,294,671.50. In 1936 plaintiff had a net income of $271,067.-56 which reduced earned surplus deficit to $4,023,603.94. No dividends were declared or paid by the plaintiff during the years 1932 to 1936 inclusive.

In computing its surtax on undistributed profits for the year ending December 31, 1936, the plaintiff claimed a credit for restriction on dividends of $72,207.94 under Section 26(c) (1) of the Revenue Act of 1936. This credit was thereafter disallowed and the deficiency assessment above referred to made and paid under protest.

In order to carry out the plan for extension of the bonded indebtedness it was

necessary for the plaintiff to file three registration statements with the Federal Trade Commission. Two of these were filed on December 16, 1933 on Form A-1 and on Form D-1. The registration statement on Form A-1 was filed in connection with the increase of the amount of authorized common stock to be able to meet the conversion privilege offered to bondholders. The registration statement on Form D-1 was filed in connection with the issuance of certificates of deposit in pursuance with the deposit arrangement with the bondholders. The third registration statement was filed March 17, 1934, on Form D-2 in connection with the proposal to reissue the bonds with an extended maturity date. A prospectus dated January 1, 1934, in connection with the registration statement on Form A-1 was sent by the plaintiff to the holders of its common stock. A prospectus dated January 9, 1934, in connection with its registration statement on Form D-1 was sent by the plaintiff to the holders of its outstanding bonds. A prospectus dated April 6, 1934, following the registration statement on Form D-2, was sent by the plaintiff to the holders of its outstanding bonds. Each of the three registration statements and the three prospectuses carried as a footnote to the description of dividend rights of both preferred and common stock the following statement:

"The by-laws of the issuer by virtue of an amendment passed May 23, 1932 provide that no part of the sum of $7,680,000.00 transferred from Capital to Surplus, pursuant to Resolution duly adopted at the Stockholders' Meeting duly called and held on May 4th, 1932, amending the Certificate of Incorporation by changing the authorized Common Stock from No Par Value to the par value of One ($1.00) Dollar per share, and reducing the stated capital of the outstanding 320,000 shares of Common Stock from $25.00 per share on the books of the Company to One ($1.00) Dollar per share, may be utilized for the payment of dividends on either the Preferred or Common stock of this Issuer so long as it has bonds outstanding, and that no part of said amount may be utilized for the payment of dividends on the Common stock of this Issuer so long as the Issuer has Preferred stock outstanding."

With the prospectus of January 9, 1934, the plaintiff sent to the holders of its outstanding bonds two powers of attorney, one

to be used by holders who desired the 2% premium and the other to be used by the holders who desired the convertible right. Each of these powers of attorney contained the following language:

"The undersigned delivers said bonds to you and executes this power of attorney in order to signify the consent of the undersigned to a certain plan for the extension of the present outstanding bonds of The Mengel Company, which said extension plan has been proposed and fully set forth to the undersigned in a letter from The Mengel Company and prospectuses of that Company, and to authorize you as his attorney in fact to do the things hereafter set out. The undersigned understands that said extension plan may be summarized as follows:

"* * * * * *

"The undersigned (the bondholder) states that in making this delivery and in executing this power of attorney the undersigned has relied on the statements contained in said letter and prospectuses of The Mengel Company, and that no statements or representations, other than those contained in said letter and prospectuses, have been made by any person to the undersigned."

In 1937 the plaintiff, pursuant to a recapitalization plan, retired its outstanding bonds and repealed the limitation in its by-laws with respect to dividends out of capital surplus. The then existing earned surplus deficit was eliminated by a charge against capital surplus. Thereafter in 1937 dividends were declared and paid upon the plaintiff's preferred stock.

Section 14(b) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 823, levied upon the net income of every corporation a surtax at graduated rates. This tax was computed upon such portions of the undistributed net income which was in excess of certain percentages of the adjusted net income. Section 26(c) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 836, provided for the allowance of a credit to the extent of "an amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *" The plaintiff contends that it is entitled to

the credit provided by Section 26(c) (1) by reason of its written contract with its bondholders arising out of the foregoing facts. The defendant contends that the transactions do not comply with the requirements of the exemption provision, pointing out that no provision limiting the payment of dividends can be found in the indenture of March 1, 1922, in the supplemental indenture of March 1, 1934, or in the plaintiff's bonds as originally issued or as extended, and further relying upon the rule now settled in this jurisdiction that neither provisions in the corporate charter nor restrictive by-laws of the corporate taxpayer fulfill the requirements of the statute. Metal Specialty Co. v. Commissioner, 6 Cir., 128 F.2d 259; Warren Telephone Co. v. Commissioner, 6 Cir., 128 F.2d 503; Atlas Supply Co. v. Commissioner, 10 Cir., 123 F.2d 356. ·

 The plaintiff apparently concedes the defendant's contention that there is no provision complying with the exemption statute in either of the indentures of March 1, 1932, or of March 1, 1934, or in the plaintiff's bonds as originally issued, or as extended, and that the amendment of its charter and by-laws was also not sufficient to entitle it to the exemption claimed. It relies upon the contract claimed to have been created by the prospectus of January 9, 1934, mailed to the bondholders in connection with the extension of the mortgage maturity and by the execution by the bondholders of the powers of attorney in indicating their acceptance of the plan. I am of the opinion that the prospectus of January 9, 1934, when mailed to the bondholders together with the power of attorney for their acceptance or rejection of the refinancing plan constituted an offer on the part of the plaintiff, and that upon the acceptance of that offer by the execution of the power of attorney enclosed the material provisions of the prospectus became binding contract obligations. Salisbury v. Credit Service, 9 W.W.Harr., Del., 377, 199 A. 674 and cases there cited; Southern Mutual Life Ins. Co. v. Montague, 84 Ky. 653, 659, 2 S.W. 443, 4 Am.St. Rep. 218; Dennis v. Thomson, 240 Ky. 727, 737, 43 S.W.2d 18; Manning v. Berdan, C.C., 135 F. 159, 162; Fear v. Bartlett, 81 Md. 435, 32 A. 322, 33 L.R.A. 721; 18 C.J.S., Corporations, § 327, page 852; Williston on Contracts (Revised Edition 1936) Vol. 1, § 27. The prospectus specifically referred to the fact that no part of the sum of $7,680,000 transferred from Capital to Surplus could be used for the payment of dividends as long as the bonds were outstanding. The power of attorney specifically stated that it indicates the consent of the bondholders to the extension plan as proposed in a letter from the plaintiff to the bondholders and by the prospectus of the Company, and that the bondholder in executing the power of attorney relied upon the statements in the letter and in the prospectus. It is not necessary that the written contract required by the statute be a part of the Supplemental Mortgage Indenture. Honokaa Sugar Co. v. Commissioner, 43 B.T.A. 151. Nor is it even necessary that it be a formal written instrument. This is particularly so when the contract relied upon was entered into before the statute was enacted and no statutory requirements were under consideration by the contracting parties. An exchange of letters showing the necessary meeting of minds is sufficient. · "As was pointed out by Chief Justice Hughes in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, at page 41, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352, the Court should not shut its eyes to the plain facts and deal with the question in an intellectual vacuum. The Court should give great weight to the fundamental rule used in construing any written instrument, namely, that it should be construed according to the intention of the contracting parties as gathered from the words of the entire instrument and from the circumstances surrounding the parties at the time when the written agreement was made." Chess & Wymond v. Glenn, D.C., 40 F.Supp. 666, 670; affirmed 6 Cir., 132 F.2d 621.

 This brings us to a consideration of whether or not the contract referred to prevented the payment of a dividend by the plaintiff corporation during the year 1936. The contract relied upon must have that effect in order to comply with the provisions of Section 26(c) (1) of the Revenue Act of 1936. The New Jersey Revised Statutes, 1937 Edition, provide by Section 14:8–19, N.J.S.A. as follows:

"The directors of a corporation shall not pay dividends except from its surplus, including surplus as determined by section 14:8–6 of this title, or from the net profits arising from the business of the corporation, nor shall they divide, withdraw, or in any way pay to the stockholders or any of them, any part of the capital stock of

the corporation or reduce its capital stock except as authorized by law."

It will be noticed that although the capital surplus was not available for the payment of dividends in 1936 because of the contract provision above referred to and the existence of outstanding bonds, yet the plaintiff had a net income of $271,067.56 for the year 1936 which under ordinary corporate operations would be available for dividends in the discretion of the board of directors. If in the present case such income could be used for the payment of dividends, then the contract relied upon did not prohibit the payment of dividends in 1936. However, in 1936 the net income must be considered in connection with the earned surplus (deficit) of the Company as December 31, 1935, in the amount of $4,294,671.50. This means that although the plaintiff had a net income for 1936 of $271,067.56 yet it still left as of December 31, 1936, an earned surplus (deficit) of $4,023,603.94. The New Jersey Statute above referred to permits dividends to be paid out of "net profits". It does not authorize a payment out of net income for any particular year. During the year 1936 the plaintiff had an impairment of capital, since its surplus accounts under usual corporate accounting is properly treated as part of its permanent capital. Edwards v. Douglas, 269 U.S. 204, 214, 46 S.Ct. 85, 70 L.Ed. 235; Willcuts v. Milton Dairy Co., 275 U.S. 215, 218, 48 S.Ct. 71, 72 L.Ed. 247; Peake v. Thomas, 222 Ky. 405, 407, 300 S.W. 885. It was therefore necessary that the net income for 1936 be credited on the corporate books to the earned surplus (deficit) account, and did not constitute net profits, out of which dividends could be declared under the New Jersey law, until the impairment of the corporation's capital had been offset. Lich v. United States Rubber Co., D.C.N.J., 39 F. Supp. 675, and the cases therein cited; Willcuts v. Milton Dairy Co., supra, 275 U.S. 215, 218, 219, 48 S.Ct. 71, 72 L.Ed. 247. It follows therefore that the net income earned by the plaintiff in 1936 was not available for the payment of dividends under the New Jersey law, and that the contract between the plaintiff and its bondholders prevented any such dividend from being paid in 1936 out of the capital surplus account which would otherwise be available for that purpose.

In accordance with the foregoing reasons, I am of the opinion that the plaintiff has brought itself within the provisions of Section 26(c) (1) of the Revenue Act of 1936 and is entitled to the credit claimed in its return for the calendar year 1936. Counsel will accordingly draft and tender judgment for the proper amount as will be determined by the stipulated figures.