**ARIZONA WESTERN INSURANCE COMPANY, Appellant,**

v.

**L. L. CONSTANTIN & CO.**

and

**S & C Trading Co., Inc., a Corporation (intervenor).**

**No. 12195.**

United States Court of Appeals Third Circuit.

Argued June 6, 1957.

Decided July 31, 1957.

As Amended Sept. 10, 1957.

Samuel M. Koenigsberg, Newark, N. J. (Koenigsberg and Rossmoore, Newark, N. J., on the brief), for appellant.

Carl V. Greenburg, Passaic, N. J. (Greenburg, Wilensky & Feinberg, Passaic, N. J., Bernard Feinberg, on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

Arizona Western Insurance Company (Arizona) instituted this suit against L. L. Constantin & Co. (Constantin) to

recover dividends on 10,000 shares of preferred stock in Constantin held by Arizona and authorized by the December 2, 1952 amendment to Constantin's certificate of incorporation.[1] This provided in pertinent part that "The holders of the preferred stock shall be entitled to receive, and the Company shall be bound to pay thereon, but only out of the net profits of the Company, a fixed yearly dividend of Fifty Cents (50¢) per share, payable semi-annually." An identical provision appeared in the preferred stock certificate. Arizona was the record holder of the stock from on or about October 1, 1954 to on or about February 1, 1956.[2]

Constantin's Board of Directors on December 28, 1954 adopted a resolution which read: "Resolved, that a dividend be declared on preferred stock at the interest rate of 5% to all * * * stockholders of record on December 30, 1954, payable January 15, 1955."[3] At the declared rate Arizona as the holder of 10,000 shares of preferred stock was entitled to dividends of $5,000. Constantin paid dividends on certain shares of its preferred stock but nothing was paid on the shares held by Arizona.

In 1955 no dividend was paid to any holder of preferred stock.

After a demand for dividends Arizona instituted suit on the basis of diversity.[4] The first count of the amended complaint related to the non-payment of the dividend declared on December 28, 1954. The second count alleged a declaration of a dividend and non-payment thereof in 1955. The third count alleged that under the terms of Constantin's amended certificate of incorporation and the preferred stock certificate, Constantin was bound to pay to Arizona out of net profits a fixed yearly dividend of 50¢ per share, payable semi-annually, and that net profits were available for the payment of such a dividend. Arizona alleged that it demanded payments of the dividends, that payment was refused and that it is entitled to a judgment in the amount of $5,000 plus interest for the dividend declared in 1954 and not paid to Arizona and to a judgment in the amount of $5,000 plus interest for the unpaid dividend which, it is alleged, Constantin was bound to pay in 1955, there being net profits available.

Constantin answered in substance that Arizona was no longer a stockholder and that therefore no dividends were due it; that any alleged accrued but unpaid dividends were due to the present owner of the preferred stock, not Arizona; and, while admitting the declaration of a dividend on December 28, 1954, Constantin denied that any dividend had been declared in 1955, and denied also that any dividends were due in 1955 as a matter of right.

S & C Trading Co., Inc., was permitted to intervene as a party plaintiff on the basis of a contention that as transferee of 10,000 shares of the preferred stock held by Arizona, it was entitled to all dividends and rights to dividends declared and unpaid, or undeclared.[5]

Arizona moved for partial summary judgment on the first count of the amended complaint and this motion was granted. In view of the intervention and claim to dividends by S & C Trading Co., the court below ordered Constantin to pay the December 1954 dividend of $5,000 plus $504.16 interest into the registry of the court to await the

---

1. The amendment authorized the issuance of 50,000 shares of preferred stock having a par value of $10.00 per share.

2. Stipulated pursuant to Fed.R.Civ.P. 76, 28 U.S.C.

3. The declared rate of 5% was equivalent to the 50¢ per share provided in the charter and stock certificate.

4. Arizona is an Arizona corporation and Constantin is a New Jersey corporation.

5. From answers to interrogatories and from facts set out in the agreed statement it appears, but is not determined by this court, that Arizona sold its 10,000 shares to S & C Trading Co. on January 31, 1956, and that S & C Trading Co. became record holder of the stock at some subsequent date.

outcome of the action between Arizona and S & C Trading Co.

Pursuant to a stipulation between Arizona and Constantin, the action based on the second count was dismissed. An examination of the minutes and books of account of Constantin showed that no dividend was declared or paid to the owners of preferred stock for the calendar year of 1955.

Constantin's motion for summary judgment, or judgment on the pleadings in the alternative, with respect to the third count of the amended complaint, was granted, and Arizona's cross-motion for summary judgment addressed to the third count was denied. The court below handed down no opinion explaining the reasons which caused it to take the action it did on the motions directed to the third count but on the occasion of oral argument on the motions the court expressed the view that "notwithstanding the provision in the certificate of incorporation, a dividend should be payable only when declared in the discretion and judgment of the Board of Directors." [6] The clerk was directed to enter a final judgment dismissing the third count with prejudice, the court below expressly determining that there was no just reason for delay in the entering of such a judgment. Rule 54(b), Fed.R.Civ.P., 28 U.S.C.

This appeal relates only to the lower court's determination as to the third count of the amended complaint. As we have indicated this count alleged that Constantin was contractually bound by the provisions of its amended certificate to pay a dividend for 1955, net profits being available.[7]

Constantin contends that if this court compels the payment of a dividend, absent fraud or bad faith on the part of the Board of Directors, it will be interfering in the management and internal affairs of the corporation; that the compelling of a payment of a dividend would change the status of Arizona from a shareholder to a creditor; and that a suit to compel a declaration of a dividend is a class action and Arizona does not allege that it sues on behalf of other stockholders similarly situated.

■ Since Arizona's claim is asserted against Constantin, a New Jersey corporation, and is based on the certificate of incorporation granted that corporation under the corporation law of that State, the law of New Jersey must determine the issues before us. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Does the law of New Jersey support the conclusion that the provisions of the amended certificate of incorporation and the preferred stock certificate contractually bind Constantin to pay a dividend for 1955, net profits being available for the purpose? We conclude that it does.

The few New Jersey cases relevant to the issue are not too helpful. In Park v. Grant Locomotive Works, Chancery 1885, 40 N.J.Eq. 114, 117–118, 3 A. 162, 165, the court employed strong language to point out that the discretion of the directors in the disposition of net profits was limited by the contract entered into between the stockholders and creditors to lift a receivership and to enable the insolvent corporation to resume its business. Payment was ordered. In the cited case the complainants, seeking payment of the larger dividend, were stockholders who had been creditors. In truth, the obligations sued on possessed some of the characteristics of a debt as well as of a stock. The decision of the Court of Chancery was affirmed *per curiam* by the Court of Errors and Appeals in 1888, 45 N.J.Eq. 244, 19 A. 621.

6. Stipulated pursuant to Fed.R.Civ.P. 76.

7. Arizona, in the event of reversal by this court, agrees that Constantin should pay the 1955 dividend into court to abide the outcome of the claim by S & C Trad- ing Co. This would be similar to the disposition already made of Arizona's claim to the 1954 dividend under the first count of its amended complaint.

In Fougeray v. Cord, Chancery 1892, 50 N.J.Eq. 185, 24 A. 499, the court recognized its power to compel a corporation to pay a dividend from profits but indicated it would not have ordered such a step had not the managers of the corporation perpetrated a fraud on the complainant. The decree of the Vice-Chancellor was reversed, *sub nom.* Laurel Springs Land Co. v. Fougeray, 1893, 50 N.J.Eq. 756, 26 A. 886, but the Court of Errors and Appeals recognized the power of the Court of Chancery to order the directors of a trading corporation to pay a dividend from profits when they refused to do so without justification.

The language employed by the Court of Chancery in Stevens v. United States Steel Corp., 68 N.J.Eq. 373, 377–378, 59 A. 905, 907 is pertinent. The Vice-Chancellor said: "Subject, of course, to provisions in the charter, and also to the by-laws of the Company, it is for the directors to say whether profits shall be distributed to the stockholders, or retained for the purpose of the corporate business." In Wilson v. American Ice Co., D.C.1913, 206 F. 736, 738, the United States District Court for the District of New Jersey stated, "It is well settled, that in the absence of statutory provisions, the granting of dividends from the profits of a trading corporation is in the discretion of the directors, subject to the intervention of a court of equity for improper refusal."

■ The decisions referred to are the only New Jersey cases relevant to the issue before us which our research and the diligence of counsel have uncovered. Nonetheless, it is our duty where "the State law supplies the rule of decision to ascertain and apply that law 'even though it has not been expounded by the highest court of the State,' Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 177–178, 61 S.Ct. 176, 178, 85 L.Ed. 109." Brown v. Moore, 3 Cir., 247 F.2d 711.

We appreciate the reluctance of courts to construe provisions relative to the declaration of dividends in such a way as to hold that the directors are bound in certain circumstances to declare dividends. But the shareholder has the right to have his contract enforced, and, if the contract as expressed in the certificate of incorporation and the stock certificate, require the construction that dividends are mandatory under specified circumstances the courts can adopt no other construction of the contract between the corporation and the stockholder. See Crocker v. Waltham Watch Co., 1944, 315 Mass. 397, 53 N.E.2d 230.

■ The amended certificate of incorporation in the case at bar provides in pertinent part that, "The holders of the preferred stock *shall be entitled to receive,* and the Company *shall be bound to pay* thereon, but only out of the net profits of the Company, a fixed yearly dividend of fifty cents (50¢) per share, payable semi-annually." [8] Identical language is found in the preferred stock certificate.[9] Words could not more clearly or plainly manifest that Constantin agreed to be bound to pay dividends where net profits were available for the purpose. We will not hold that the words were employed as a bait to prospective purchasers of preferred stock.

■ The statutes of New Jersey do not preclude a corporation from setting provisions in its charter providing for the mandatory payment of dividends.[10] New Jersey Statutes Annotated 14:8–20 states that, *"Unless otherwise provided*

8. Italics added.

9. The pertinent part of the amended certificate of incorporation, and the preferred stock certificate are set out in the agreed statement filed pursuant to Fed. R.Civ.P. 76.

10. N.J.S.A. 14:8–1 authorizes a corporation to create two or more classes of stock with such "designations, prefer-

ences, * * * or other special rights" as expressed in the certificate of incorporation.

N.J.S.A. 14:8–2 provides in part that, "The holders of preferred or special stocks shall be entitled to receive dividends at such rates, on such terms, and at such times as shall be provided in the certificate of incorporation * * *."

*in the certificate of incorporation,* or in a by-law \* \* \* the directors of every corporation organized under this title may, in their discretion, from time to time \* \* \* determine what, if any, dividends shall be declared and paid to stockholders out of its surplus or net profits \* \* \*." [11] The language we have italicized shows that the discretion ordinarily possessed by the directors in respect to the declaration of dividends may legally be contracted away under the law of New Jersey.

The explicit language of Constantin's amended certificate of incorporation and of its preferred stock certificates and the provisions of the New Jersey statutes themselves cause us to conclude that the Supreme Court of New Jersey, did that tribunal have the instant case before it, would hold that the payment of a dividend for the year 1955 was required of Constantin if there were net profits available. This conclusion is not incongruous in the light of the general law [12] dealing with mandatory dividends, and is supported by the decisions of strong courts of other States.[13]

The only question that remains is whether Constantin had net profits for the year 1955 out of which dividends could have been paid.[14] Arizona served interrogatories on Constantin requesting the latter to reveal the aggregate of its "net profits (whether denominated 'earned surplus' or otherwise)" as of December 31, 1954 and 1955. Constantin replied that "total surplus" on the respective dates was $712,821.30 and $833,923.45, but added "whether earned or contributed is not shown." Arizona thereupon obtained an order directing Constantin to "Reply to \* \* \* the interrogatories by stating the aggregate of defendant's net profits, whether denominated earned surplus or otherwise. \* \* \*" Pursuant to the order Constantin gave the same figures and described them as "earned surplus." It would appear that Constantin was attempting to evade a straightforward answer to Arizona's interrogatory, an evasion which the court below should not have tolerated. A corporation is no more entitled to avoid the discovery processes of a United States district court than is an individual. Corporate officers must be compelled to answer proper questions and if they refuse to respond to the proper orders of the court appropriate legal process should be applied to them. At the argument before us counsel for Constantin wisely abandoned the quibble and conceded in open court that "net profits" were available.

The order of the court below granting summary judgment to Constantin will

---

11. Italics added.

12. 12 Fletcher, Cyc. Corp., § 5447.1 (1957 Revision); 18 C.J.S. Corporations § 223; 13 Am.Jur., Corporations § 696; Annotation, 27 A.L.R. 1073, 1089–92.

13. New England Trust Co. v. Penobscot Chemical Fiber Co., 1946, 142 Me. 286, 50 A.2d 188; Crocker v. Waltham Watch Co., 1944, 315 Mass. 397, 53 N.E.2d 230; Lydia E. Pinkham Medicine Co. v. Gove, 1939, 303 Mass. 1, 20 N.E.2d 482; Warburton v. John Wanamaker Philadelphia, 1938, 329 Pa. 5, 196 A. 506; Burk v. Ottawa Gas & Elec. Co., 1912, 87 Kan. 6, 123 P. 857; Cratty v. Peoria Law Library Ass'n, 1906, 219 Ill. 516, 76 N.E. 707; Wisconsin Lumber Co. v. Greene & Western Telephone Co., 1904, 127 Iowa 350, 101 N.W. 742, 745, 69 L.R.A. 968; Wood v. Lary, Sup. 1st Dept.1888, 47 Hun, N.Y., 550, affirmed 1891, 124 N.Y. 83, 26 N.E. 338.

14. The amended certificate of incorporation and the preferred stock certificate require payment only out of "net profits." This is in conformity with N.J.S.A. 14:8–19 which prohibits directors from paying dividends except from surplus "or from the net profits arising from the business of the corporation." The expression "net profits" as used in the statute has been construed not to be synonymous with annual net earnings but to be the "clear pecuniary gain remaining after deducting from the gross earnings of the business the expenses incurred in its conduct, the losses sustained in its prosecution, and the capital invested." Lich v. United States Rubber Co., D.C.D.N.J. 1941, 39 F.Supp. 675, 681, affirmed on opinion of district court, 3 Cir., 1941, 123 F.2d 145. See also Mengel Co. v. Glenn, D.C.W.D.Ky.1943, 50 F.Supp. 765, 769.

 

be reversed. The case will be remanded with the direction to enter judgment in favor of Arizona in such amount as the facts and the law shall require.