## SCHMIDT et al. v. SCHMIDT et al.
### No. 2268.

Court of Civil Appeals of Texas. Beaumont.
July 6, 1932.

Rehearing Denied Sept. 14, 1932.

Orgain, Carroll & Bell, of Beaumont, and
Adams & McAlister, of Nacogdoches, for appellants.

J. J. Collins, of Lufkin, and Seale & Thompson, of Nacogdoches, for appellees.

WALKER, J.

This suit was instituted in the district court of Nacogdoches county on the 5th day of February, 1932, by appellant, Mrs. Bertha Schmidt, joined pro forma by her husband, Henry P. Schmidt, against Herbert J. Schmidt and the corporation Mayer & Schmidt, Inc. It was alleged that the Schmidts were citizens of Nacogdoches county, and that the corporation had its principal office and place of business in the city of Nacogdoches, Nacogdoches county; that it had a capital stock of $75,000, divided into seventy-five shares of $1,000 each, owned, prior to January 1, 1932, as follows: Mrs. Louise Rhein, sixteen shares; John Schmidt, forty-three shares, Henry P. Schmidt one share, and appellant Mrs. Bertha Schmidt, fifteen shares. It was further alleged that the corporation was engaged in the mercantile business in the city of Nacogdoches, and on and prior to January 1, 1932, owned the following assets: Stock and merchandise of the reasonable fair cash market value, $75,000, fixtures and fire equipment of the reasonable cash market value of $20,000. The business having been in operation since 1876, incorporated in 1902, its good will was of the reason-

able cash market value of $25,000. The assets, as mentioned, gave to appellants fifteen shares of stock, the reasonable value of $1,-600 per share. It was further alleged that up to January 2, 1932, the business of the corporation had been skillfully managed, and that the corporation was a prosperous business concern. It was further alleged that after January 1, 1932, Herbert J. Schmidt acquired from John Schmidt forty-one shares of the capital stock of the corporation, and that, after Herbert J. Schmidt had acquired the ownership of forty-one shares of the stock of the corporation, he and John Schmidt, the owner of two shares, called a stockholders' meeting of the corporation, without the knowledge of the other stockholders, and at said meeting John Schmidt was elected president of the corporation, and Herbert J. Schmidt secretary and treasurer and general manager, and at said meeting John Schmidt, Herbert J. Schmidt, August C. Schmidt, and Simon Zeve were elected directors of said corporation, and that the last two named directors own no stock in the corporation; and, after being elected general manager of the business of the corporation, Herbert J. Schmidt took charge of its affairs, and now has the management of its said business.

It was further alleged that, for the purpose of forwarding his own interest, and with the scheme of defrauding the corporation, Herbert J. Schmidt elected the board of directors, and, as a result of the election, the board of directors was subservient to his will and dictation; that Herbert J. Schmidt was wholly incompetent and inexperienced in managing the affairs of the corporation: that once in the past he was connected with the corporation, at which time he was short in his accounts, and in no instance had been successful in handling any affairs of which he had charge; that Herbert J. Schmidt "is dishonest, unscrupulous, deceitful and a trickster"; that he secured control of the stock of the corporation "with the scheme, desire and fraudulent intent" to take charge of the business and take from it all monies that he could grasp for the purpose of securing the funds himself and the wrecking of the business"; the purpose of the said Herbert J. Schmidt constituted "a scheme and connivance on the part of said Herbert J. Schmidt to take charge of said business and apply the proceeds of same to his own individual wants and satisfaction and to wreck the business; that after electing a Board of Directors subservient to his dictation, he "has, since getting charge of Mayer & Schmidt, dissipated, wasted and squandered and pillaged the assets of said Mayer & Schmidt"; that sales of merchandise have been put on at much below their cost price and for the purpose of dissipating, wasting and converting the assets of said firm to his own individual debts"; that "he, Herbert J. Schmidt, is taking from said business monies with which to pay his individual outstanding indebtedness"; that, if same is continued, the plaintiff will suffer irreparable injury and damage; that, since said Herbert J. Schmidt has become the controlling stockholder and has taken charge of the business, he "has taken from the business various and sundry sums of money," and has "applied the same to his own outstanding indebtedness, and in no wise connected with the business of Mayer & Schmidt"; the unfitness of Herbert J. Schmidt to manage the affairs of the company was pleaded, and the facts upon which his unfitness was based were fully set forth.

It was further alleged that the taking charge of said business was "a scheme and desire on his (Herbert J. Schmidt's) part to dissipate, waste and rob Mayer & Schmidt of funds sufficient to pay the individual debts of himself"; that, since Herbert J. Schmidt took charge of the business on January 1, 1932, its assets have been dissipated, wasted, and squandered to the point that "now it is not of the value of more than 50% as it was on January 1, 1932"; "that if business be continued under the control and management of Herbert J. Schmidt the same will be wrecked and ruined and of no value"; that an examination of the books "will show that there has been extracted, taken from and converted from said Mayer & Schmidt by Herbert J. Schmidt large sums of money," and "it will be seen that the proceeds from the business, since being operated and managed by Herbert J. Schmidt have not gone into the business of Mayer & Schmidt but have been paid out by Herbert J. Schmidt in payment of his personal debts." The petition closed with the following prayer:

"Wherefore, plaintiff prays the Court that defendants be cited to appear and answer this petition and for judgment that account be taken of all and every dealing and transaction had by said Mayer & Schmidt since Jan. 1, 1932, and that said business be adjusted to pay to plaintiff whatever may be plaintiff's interest in and to said business, and that some proper person be appointed to be receiver of said business in order that the same may be run and operated so as to protect the rights of the plaintiff, in that if the same be not done, then the same will fail, and that the defendant, H. J. Schmidt, in the meantime, be restrained by order of the Court from collecting or receiving any debts due and owing to said Mayer & Schmidt, but that the same be placed in the hands of some party that will manage and operate business, and for such other and further relief as plaintiff may be entitled to in law and equity," etc.

Appellees' general demurrer to appellant's petition was in all things sustained, from

which judgment the appeal was regularly prosecuted to this court.

Appellees would sustain their general demurrer by the following propositions:

First. They say the petition was bad on general demurrer because there was no allegation in the petition that appellant was a stockholder in the corporation when the suit was filed. To state a cause of action, it was necessary for appellant's petition to contain an allegation that she was a stockholder in the corporation at the time the suit was filed. 14 C. J. 882. We think this fact was sufficiently alleged in the petition. Thus it was alleged that appellant owned fifteen shares on the 2d day of January, 1932. The suit was filed on the 5th day of February, 1932. In the ninth paragraph of the petition it was alleged that, as a result of the wrongs complained of, "the shares of stock as owned by the plaintiff will be worthless, of no market value and unsaleable," and further "that by reason of this, the plaintiff's interest in and to said firm cannot subsist and go if the action and conduct of said business be maintained and run as it is now being had," and "that if the business be run and operated under the direction and management of the said Herbert J. Schmidt, that the plaintiff will suffer irreparable injury and damage." We think these allegations of fact clearly raised the issue that appellant owned stock in the corporation at the time the suit was filed.

Second. The point is made that the petition contained no allegation that appellant had made a demand "upon the Board of Directors of the corporation to correct the wrongs complained of." Where a stockholder is injured by the duly elected officers of a corporation, the wrong must be redressed within the corporation, if possible, and to have equitable relief the stockholder must show that he called the wrongs, of which he complains, to the attention of the governing officers, and, having been refused relief by them, he was unsuccessful in his efforts to obtain remedial action through the stockholders as a body. Cates v. Sparkman, 73 Tex. 619, 11 S. W. 846, 15 Am. St. Rep. 806, 7 R. C. L. 319, 320. But these allegations are not essential where, by the facts alleged, it is shown that an appeal to the governing officers or the stockholders, as a body, would be futile. 14 C. J. 879. It is true that the petition does not show that appellant made an unsuccessful effort to obtain remedial action by the corporation itself, first by application to the directors and then by application to the body of stockholders, but the alleged facts show that such an effort to obtain relief would have been futile. Thus it was alleged that Herbert J. Schmidt, who is charged personally with all the wrongful and illegal acts, was the majority stockholder, and that at a stockholders' meeting, of which appellant and the other stockholders, except John Schmidt, who owned two shares, and Herbert J. Schmidt, who owned forty-one shares, had no notice, John and Herbert J. Schmidt elected themselves and August C. Schmidt and Simon Zeve, who owned no stock, directors of the corporation, and that this was done "with the scheme, desire and fraudulent intent to take charge of the business and take from it all monies that he (Herbert J. Schmidt) could grasp for the purpose of securing the funds himself and the wrecking of the business." From these facts it conclusively appears that an appeal to the directors and the stockholders, as a body, would have been futile.

Third. There is no merit in the third proposition that the petition "does not allege facts constituting appellant's cause of action, but contains only broad and sweeping generalizations, the mere conclusions of the pleader." From the summary of appellant's petition, as made above, the necessity for the receivership appears clearly from the facts alleged; that is, from the facts as distinguished from mere legal conclusions.

Fourth. Appellees assert that the general demurrer was correctly sustained "because it clearly appears from said petition that the sole object of the plaintiff's suit was the appointment of a receiver to take charge of the defendant corporation. The remedy of receivership is ancillary in its nature, and in order to confer jurisdiction upon a court to appoint a receiver it is essential that there shall be, at the time of the appointment, a suit pending in which relief other than the mere appointment of a receiver is sought." This proposition, as it relates to appellant's petition, must be denied. As we construe the petition and the prayer, appellant's cause of action was not merely for "the appointment of a receiver to take charge of the defendant corporation." An analysis of the prayer to the petition shows that appellant prayed (a) for an accounting between the corporation and Herbert J. Schmidt, and that (b) pending the accounting, Herbert J. Schmidt be restrained by an order of the court from collecting or receiving debts due and owing the corporation, and (c) that, pending the accounting, a receiver be appointed for the corporation. From this analysis of the prayer it clearly appears, we think, that the main purpose of this suit was for an accounting between the corporation and Herbert J. Schmidt, and, as ancillary to this purpose, that, pending the accounting, Herbert J. Schmidt be restrained from collecting and receiving the debts due and owing the corporation, and that a receiver be appointed to take charge of the business of the corporation. As we analyze the facts pleaded and

the relief prayed for, this appeal does not raise the issues suggested by appellee's fourth proposition.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded for a new trial.