R. E. MORRISON, Appellant,

v.

THE ST. ANTHONY HOTEL, San Antonio, Texas et al., Appellees.

No. 10275.

Court of Civil Appeals of Texas.

Austin.

Jan. 5, 1955.

Supplemental Opinion Jan. 19, 1955.

Rehearing Denied Jan. 26, 1955.

F. G. Garza, Premont, for appellant.

Wesley Dice, State's Atty., Austin, for the State.

Ernest W. Clemens, George H. Spencer, San Antonio, Davis, Clemens, Knight & Weiss, San Antonio, of counsel, for appellant.

Carl Wright Johnson, Nat L. Hardy, Dodson, Duke & Branch, Chas. W. Duke, Clifford Davis, San Antonio, for appellees.

HUGHES, Justice.

All parties before this Court filed motions for summary judgment in the court below. The motion of third party defendant, Pan American Hotel Company, and intervenors, J. H. Frost, Forrest M. Smith and Ernest M. Groos, Trustees of the Morrison Trust, appellees, was granted and the motion of R. E. Morrison, plaintiff below and appellant here, was denied.

The judgment rendered found that appellees were the owners "of the legal and equitable title to the 1200 shares of Class 'B' stock in the St. Anthony Hotel, San Antonio, Texas," claimed by appellant and vested title to such stock in appellees. The judgment directed that appellant deliver certificates of such stock to the Alamo National Bank in San Antonio in exchange for two cashier's checks in the respective sums of $241,484.00 and $18,198.76, endorsed to his order and held by such bank.

This suit was initiated by appellant against the St. Anthony Hotel, San Antonio, Texas, a corporation, and its Board of Directors to compel the payment of dividends on the 1,200 shares of Class "B" Capital stock which he claimed to own. The defendants denied appellant's ownership of the stock and impleaded Pan American Hotel Company, a corporation, which asserted ownership of the stock based upon the alleged exercise, on February 29, 1952, of an option to purchase the stock claimed by appellant. Intervenors claimed ownership of one half of the stock by transfer from Pan American.

The trial court severed the issues relating to ownership of the stock from other issues in the case and tried only the stock ownership issues. This action of the trial court is unquestioned.

The ownership of the stock in question depends upon the proper exercise of a valid option to purchase such stock on the part of Pan American. The primary questions presented then are (1) is the option valid and (2) did Pan American exercise such option in accordance with its terms. Before discussing the particular points made by appellant we will review the factual background of this controversy.

R. W. Morrison, who died April 3, 1948, was the owner of the physical properties constituting the St. Anthony Hotel in San Antonio. This ownership was evidenced by his ownership of all the stock in the Pan American Hotel Company, a corporation, which held the legal title and of which Mr. R. W. Morrison was President.

In 1944 Pan American entered into a lease and operating agreement with St. Anthony Hotel, Ltd., a limited partnership composed of Ernst V. Kunz, "as general partner" and R. W. Morrison (owner of all Pan American stock), H. G. Morrison, R. E. Morrison (appellant and nephew of R. W. Morrison) and P. G. Morrison as special partners, such lease and operating agreement being for a period of 35 years. R. W. Morrison owned sixty per cent of the assets of this partnership, including the 35-year lease and operating agreement.

In 1946 R. W. Morrison brought about a dissolution of this limited partnership by conveying his interest therein, sixty per cent, to Pan American. Whereupon the remaining partners formed a new limited partnership under the name "The St. Anthony Hotel, Ltd.," and, under an agreement with Pan American took over the lease and operating agreement relating to the St. Anthony Hotel. One of the provisions of this new agreement was that Pan American had the option to cancel such lease upon 30 days notice and upon payment to lessee, the partnership, of a cash sum equal to the net income received by lessee under the lease for the preceding three years or three times the annual net income if less than three years had elapsed.

About three months after the death of R. W. Morrison appellant and H. G. Morrison ousted E. V. Kunz and Paul G. Mor-

rison from the limited partnership, "The St. Anthony Hotel, Ltd.," declared the dissolution of such partnership and expressly repudiated the right of Pan American to cancel the hotel lease as provided in the 1946 agreement. The result of this repudiation was that Pan American gave notice to the partnership of the cancellation of the lease and operating agreement as provided in the 1946 agreement and in order to determine the rights of the interested parties Pan American filed suit in the Bexar County District Court. This litigation was terminated by a compromise agreement dated December 1, 1948. Out of certain provisions of this agreement this controversy arises.

The essentials of this agreement which we need state here are:

The limited partnership of which appellant was a member was to be dissolved, its accrued profits to be distributed to the partners and its assets transferred to and its liabilities to be assumed by a corporation to be formed. The name of this corporation was "The St. Anthony Hotel, San Antonio, Texas."

The capital stock of this corporation was to be $50,000.00 and was divided into Classes A and B, each share of stock having a par value of $10.00. 52% or 2600 shares of the stock were Class A and 48% or 2400 shares were Class B. Class B stock had a preferential right to annual dividends up to $130,000.00, both classes sharing equally in dividends in excess of this amount.

Pan American and the new corporation were to cancel the existing lease and operating agreement relating to the hotel and a new or "reformation of said lease agreement and supplements" were to be made for the same period of time and upon other stated provisions

"* * * except that the provision contained in said supplemental agreement providing for the option to cancel said lease based upon the payment of three times the average net income to the lessee shall become opera-

tive only after the expiration of three years from December 31, 1948, and an appropriate provision shall be inserted as a condition to the stock of the lessee corporation that all cancellation funds shall be paid to the holders of the 'Class B' stock in addition to other funds said class of stock may be entitled to as a liquidating dividend in event of liquidation."

The agreement provided that the Class B stock should be issued in equal shares to Mr. Kunz, Paul and H. G. Morrison and appellant and that they should be non-transferable except by unanimous written consent of the Class A stock.

Pursuant to such compromise agreement the new lessee corporation was organized on the 31st day of January, 1949, and on the same day it executed a new lease and operating agreement with Pan American for the St. Anthony Hotel. The lease term was 30 years and 11 months. Reserved in the lease by Pan American was a right to purchase outstanding Class B stock which was expressed as follows:

"12. Lessor reserves for itself, its successors and assigns or nominee:

"(a) At any time after December 31, 1951, Lessor shall have the continuing option, upon 30 days' written notice to the holders of outstanding Class 'B' stock in Lessee, to be given by mailing said notice, postage prepaid, to the post office addresses of said stockholders as then appear upon the records of said Lessee, the right to purchase all outstanding Class 'B' stock, upon payment to each such stockholder in cash, at the expiration of said 30 days, or tender thereof to each such stockholder, that proportion of a sum of money which would equal three times the average net annual earnings of Lessee under this lease, before income taxes, during the three years next preceding the giving of said notice as the number of shares held by each such Class 'B' stockholder bears to the total number of shares

of authorized Class 'B' stock. The assets of the corporation at the time of purchase under this option shall be sufficient, at fair value, to pay all liabilities of the corporation, after which the capital stock shall be unimpaired; all such matters to be determined by the Certified Public Accountants then auditing the accounts of the corporation as provided in Paragraph 6 of this agreement."

Paragraph 6 of the agreement reads:

"It is mutually agreed and understood with respect to auditing: The books and accounts of the hotel's operations shall be audited each month and a final annual audit shall be made each year, all giving the customary information, and Lessee shall keep the books and accounts of operation of the hotel current at all times so that information will be readily available to the auditors. This auditing shall be done by the firm of George, Thrift & Cockrell, and should they cease to function as Certified Public Accountants, or should their work become unsatisfactory to Lessor or Lessee, then the auditing will be done by another recognized auditing firm named by Lessor and acceptable to Lessee. The fee charged by auditors shall be treated as a regular expense of the hotel."

Appellant, Mr. Kunz and Paul G. and H. G. Morrison by special endorsement appended to the lease consented to and approved the option reserved to Pan American in paragraph 12 of the lease.

The charter issued The St. Anthony Hotel, San Antonio, Texas, contained the following reservation regarding Class B stock:

"(c) It is recognized that the 'Class B' stock is held by all the owners and holders thereof subject to:

"(1) A permanent and continuing option in favor of the Pan American Hotel Company, its successors, assigns, or nominee, exercisable at any

time after December 31, 1951, upon thirty (30) days' written notice to the holder or holders of outstanding 'Class B' stock, to be given by mailing said notices, postage prepaid, to the post office addresses of said stockholders as then appear upon the records of the corporation, to purchase all outstanding 'Class B' stock upon payment to each such 'Class B' stockholder in cash, at the expiration of said thirty (30) days, or tender thereof to each such 'Class B' stockholder, that proportion of a sum of money which would equal three times the average net annual earnings of the corporation before income taxes during the three years next preceding the giving of said notice as the number of shares held by each such 'Class B' stockholder bears to the total number of shares of authorized 'Class B' stock. The assets of the corporation at the time of purchase under this option shall be sufficient, at fair value, to pay all liabilities of the corporation, after which the capital stock shall be unimpaired; all such matters to be determined by the Certified Public Accountants then auditing the accounts of the corporation."

The same reservation was printed on the Class B stock certificates issued by such corporation to appellant.

On February 29, 1952, Pan American sent appellant the following letter:

"Mr. Richard E. Morrison
"219 West Magnolia Avenue
"San Antonio, Texas

"Dear Mr. Morrison:

"This letter is to advise you that the Pan American Hotel Company desires to, and does hereby exercise its option to purchase all shares of the Class B stock owned and held by you in the St. Anthony Hotel, San Antonio, Texas, pursuant to the option as set forth in Paragraph (C)–1, Article 6, of the Charter of said corporation,

reading as follows: (Here follows option copied from Charter quoted above.)

"You are requested to make tender of your Class B stock to Pan American Hotel Company at its offices, at 2104 Alamo National Building, San Antonio, Texas, within or not later than at the expiration of 30 days from date hereof, whereupon Pan American Hotel Company will pay you therefor the option price as determined from the foregoing option agreement.

"We have advised the auditors, in preparing their certificate under the option agreement aforesaid, to disregard Paragraph 5 of the lease contract with the St. Anthony Hotel. We wish to advise you, however, that in event the auditor's certificate as to the amount due you for your Class B stock is not acceptable to you, then the Pan American Hotel Company is reserving its right to invoke Paragraph 5 of said lease and that it has no intention to waive said Paragraph 5 or its rights thereunder, in that event.[1]

 "Very truly yours,
 "Pan American Hotel Company."

On March 26, 1952, George, Thrift & Cockrell, Certified Public Accountants who were the current auditors for the St. Anthony Hotel, having been previously requested by Pan American, reported their findings as to the value of the Class B stock of the Hotel Corporation, in part, as follows:

"The terms and conditions under which the Pan American Hotel Company may exercise its option to acquire 'Class B' stock of the St. Anthony

Hotel is set forth in paragraph (c)–1, Article 6, of the Charter of The St. Anthony Hotel, as follows: (copied above)

"* * * * * *

"According to our determination, the assets of the corporation at February 29, 1952, had a fair value sufficient to pay all liabilities of the corporation and still leave the capital stock unimpaired with an excess of $111,397.53 subject to final determination of income taxes.

"Omitted in the determination has been any adjustments of income taxes due to examination of the tax returns of the corporation from its inception through the fiscal year ended June 30, 1950, and due to a refiling of income tax return for the fiscal year ended June 30, 1951, which it is believed will result in a refund. This return has not yet been prepared.

"Our determination has also disregarded the book value of excess china and glassware. The board of directors has long had a resolution stating that the sum equal to the book value of these items should not be available for dividends, which position we believe to be well taken. We have knowledge of the fact that in the purchase of the shares of another stockholder, these same facts were taken into consideration and a special agreement was made.

"Also disregarded in our determination is the book value of prepaid business promotion expenses and other deferred expenses totaling $15,933.67. These items could not be used in the payment of liabilities in accordance

---

1. 5. The amounts of money mentioned in this lease are based partially upon room revenue during the period July 1, 1943 to June 30, 1944, and in calculating the amount of rent due for any particular month, the total room revenue during the preceding 12-month period shall be used and the amount of rent due shall be increased or decreased, as the case may be, in the proportion the room revenue increased or decreased during the comparative periods, but in no event shall the total rent paid for any month be less than the amount necessary when added to the amount of rent paid during the preceding 11 months to make the total for the 12-month period $200,000.00.

with the terms as set forth in the charter of The St. Anthony Hotel as quoted above.

"The attached schedule which is a part of this report sets forth the detailed computations of the sums to be paid the 'Class B' stockholders of The St. Anthony Hotel in accordance with their recorded holdings at February 29, 1952. In total, the amounts to be paid in purchase of the stock are as follows:

"To Richard E. Morrison for 1,200
 shares $ 241,484.00
"To Paul G. Morrison for 600
 shares $ 120,742.00

 "Total $ 362,226.00

"In arriving at the above figures we have, at the request of the Pan American Hotel Company, disregarded any re-accounting under paragraph 5 of the lease and operating agreement dated January 31, 1949, under which The St. Anthony Hotel, as lessee, has been operating the properties held by the lessor, the Pan American Hotel Company."

On March 28, 1952, Pan American sent appellant the following communication:

"Referring to letters to each of you, dated February 29, 1952, giving notice of the exercise by Pan American Hotel Company of its option to call the Class B stock owned by each of you in The St. Anthony Hotel, San Antonio, Texas:

"This is to advise each of you that after office hours yesterday afternoon the Certified Public Accountants presently auditing the accounts of said St. Anthony Hotel completed and delivered their written determination of assets of the corporation at the close of business February 29, 1952, at fair values being sufficient only to pay all the liabilities of said corporation to leave the capital stock unimpaired, and

thereafter show an excess of $75,000.00 in cash subject to dividends, and that the sum of money due to Richard E. Morrison for his stock would then be, after payment of said dividends, $241,-484.00, and to Paul G. Morrison, after payment of said dividends, the sum of $120,742.00. The sum of these two equals three-fourths of three times the average annual net earnings of the corporation to the close of business February 29, 1952, before taxes. A copy of said determination is herewith enclosed to each of you.

"Before the certificate of determination had been completed, the basis figures had been determined Tuesday morning, March 25, 1952, and at a Board meeting of said St. Anthony Hotel, held Tuesday, March 25, 1952, a dividend of $75,000.00 was authorized as of close of business February 29, 1952. This disposed of the surplus assets above, required by the contract in order to entitle holders of said Class B stock to be paid the full three times the average annual net earnings of the corporation next preceding three years prior to February 29, 1952, before taxes. I am advised proper checks therefor have been delivered. This only left the corporation solvent and its capital unimpaired as of the effective date of the call. After action by the Board of Directors in declaring the dividend in reliance upon $75,000.00 being the maximum excess of assets after requirements under the contract, the Accountants in rechecking their figures advised that this excess should be raised a total of $36,397.53.

"Therefore, I am ready in behalf of Pan American Hotel Company to deliver cashier's check on the Alamo National Bank upon tender and delivery of all your certificates of Class B stock in said St. Anthony Hotel, properly endorsed, and to be in full satisfaction of your rights and claims as a Class B stockholder in said corporation as follows: To Paul G. Morrison

$120,742.00; to Richard E. Morrison $241,484.00. In view of the explanation above with respect to the insufficiency of the dividend to disburse the accumulated surplus in excess of the sums required by the contract and of the fact that there is not time sufficient for a called meeting of the Board of Directors to declare an additional dividend, there will be tendered additional cashier's checks as follows: To R. E. Morrison, $18,198.76; to Paul G. Morrison, $9,099.38. These checks represent the full purchase price plus the accumulated surplus properly available as dividends upon exercise of the option and not declared March 25, 1952.

"At the time The St. Anthony Hotel was incorporated, there was included in its assets an item designated 'Surplus China and Glassware', which I am informed represented surplus china and glassware owned by the prior partnership. This increased the book surplus in the amount for which said surplus asset has been carried on the books of the corporation. It has always been recognized by all directors that such asset was not available from which to pay liabilities of the corporation nor upon which to declare dividends. The corporation has purchased and used from this surplus asset if, as and when it was usable by the corporation for consumption.

"Pan American Hotel Company recognizes that this item of surplus china and glassware, having been disregarded in determining assets which at fair values would be available to pay the liabilities of the corporation, leaves that asset equitably belonging to the Class B stockholders. If you desire The St. Anthony Hotel to purchase this china and glassware from time to time, if as and when it may be useful to the St. Anthony Hotel on the basis purchases have heretofore been made, Pan American will enter into an agreement with you, guaranteeing that The St. Anthony Hotel will so purchase such china and glassware from time

to time and that the Auditor of The St. Anthony Hotel will from time to time as any of such assets are used by said Hotel send to R. E. Morrison a check for one-half of the value taken and used, and to Paul G. Morrison a check for one-fourth the value so taken and used, provided your addresses be left with the Auditor of the Hotel and the agreement to provide that his decision as to the value taken and used and the proper amount of checks to be tendered shall be final between all parties.

"Neither the contract between Pan American and the Class B stockholders, nor the charter of the Hotel corporation, deals in any fashion with unsettled income taxes. Pan American Hotel Company is advised that since the 1951 amendment to the Internal Revenue Act a new income tax return for said corporation will be filed for the year 1951, claiming the benefits of somewhat lower rates. In making their determination, the Auditors have not considered any probable liabilities for reassessments nor for possible refunds with respect to income taxes for the years 1949, 1950 and 1951, for the reason the contract is silent with respect to any adjustments of income taxes after acquisition of the stock by Pan American Hotel Company. Pan American Hotel Company is willing, if you so desire, to enter into an agreement with respect to this matter substantially to the effect that if any refunds be received for any of said years they will be held in escrow by The St. Anthony Hotel until the returns of all three years are finally adjusted and settled, and if there be any reassessments resulting therefrom such reassessments will be charged against the refunds, if any; if there be any surplus then remaining from refunds, it will then be distributed one-half to R. E. Morrison and one-fourth to Paul G. Morrison; the other one-fourth will belong to Pan American under its purchase of Class B stock from Ernst V. Kunz; said agreement to further pro-

vide that if, when said taxes are all finally settled reassessments should exceed refunds, then on demand by The St. Anthony Hotel, or its successor or assign, R. E. Morrison will pay to it one-half of such excess, and Paul G. Morrison will pay to it one-fourth of such excess; and any expenses incurred by said Hotel in contesting reassessments, or seeking to enforce refunds will be borne one-half by R. E. Morrison and one-fourth by Paul G. Morrison, to be repaid on demand by said Hotel, its successor or assign; the other one-fourth will be borne by Pan American as holder of the Ernst V. Kunz Class B stock.

"This tender is upon the express condition and assumption that you will abide the determination of the Accountants, made in accordance with your contract and charter. It has been recently discovered by Pan American that paragraph 5 of the present lease and the paragraph to substantially the same effect in the terminated partnership lease has not been respected at any time as raises in room revenue were made. If this tender which relieves you of that proper accounting to Pan American Hotel Company in its rent settlements under the lease contract is not accepted and if you do not promptly comply with your contract, Pan American Hotel Company here reserves its right to have a proper accounting made under said paragraph 5 to not waive said paragraph, and to insist upon a proper accounting to determine the amount which would be required to put the corporation in the financial condition, with respect for the lease would put it, and that this be done before the value of the stock under the terms of the option agreement is determined.

"The two suggestions with respect to surplus china and glassware and income taxes are made so that no ground may exist upon which to object to a prompt closure in accordance with the determination of the Certified Public Accountants and are wholly at your option.

"It is probable that you would be entitled to the full business day of March 31, 1952, in which to comply with your agreement to deliver your stock in response to said call and this tender. It will be necessary for me to be absent from the city on that day. If this matter is not closed out prior to Monday, March 31, 1952, I will leave with Mr. J. D. Dodson, as agent for Pan American Hotel Company, the two cashier's checks above referred to, with full authority to accept delivery of the stock from each of you, which are payable to me and which I have endorsed respectively to you, as in full payment for said stock and your rights and claims as a Class B stockholder, and to deliver in exchange the appropriate checks.

"I will be in my office at 2104 Alamo National Bank Building, Saturday, March 29th, from 8:30 a. m. until 4 p. m., if necessary, awaiting your response. If you elect to wait until Monday, Mr. J. D. Dodson will be in his office from 9 a. m. until 12 Noon, and from 4 p. m. until 5 p. m. If you prefer to make closure at the Alamo National Bank during banking hours, I will be glad to meet you there upon advice of the hour of your convenience on Saturday; and, if you prefer to close on Monday, Mr. Dodson will be glad to meet you at the Alamo National Bank on advice as to your convenience, at any time between 9 and 12 a. m., Monday."

Appellant refused to accept the tendered checks and on April 16, 1952, they were placed in escrow in the Alamo National Bank in San Antonio for delivery to appellant upon surrender of the stock certificates in the Hotel Corporation held by him. These checks bore the following endorsement:

"Pay to the order of R. E. Morrison in full payment of all Class B stock of

R. E. Morrison in St. Anthony Hotel, San Antonio, Texas, and of all his rights and claims as holder of such stock (signed) W. R. Strickland, W. R. Strickland, President, Pan American Hotel Company."

Appellant's first point is to the effect that appellees having acted upon and with reference to the provisions contained in the Charter to the Hotel Corporation regarding a stock purchase option in favor of Pan American and not upon or with reference to the stock purchase option as set out in the lease and operating agreement between Pan American and the Hotel Corporation and, so appellant asserts, there being material differences between the two that the court erred in not granting his motion for summary judgment.

The Charter of the Hotel Corporation was issued and the lease and operating agreement between Pan American and the Hotel Corporation was executed on the same day and in furtherance of the agreement theretofore made in compromise and settlement of pending litigation.

 Appellant contends that under these circumstances all documents and instruments executed and delivered in furtherance of such objective should be read and construed together. We agree. When this is done it is obvious that there is only one option in favor of Pan American to purchase the Class B stock held by appellant and whether the option be found in the charter, the stock certificate or in the lease-operating agreement is immaterial. Nor do we believe that a single reference to its being found in one rather than in the other or both of the other instruments to be of any consequence, as we find the terms of the option to be substantially the same in all three instruments.

Appellant points to the language of the lease which provided that the purchase price of the stock shall be based on three times the average net annual earnings of the Lessee "under this Lease" whereas the charter provides that such price shall be three times the average net annual earnings

"of the Corporation," as being inconsistent in substance.

While the charter of the corporation authorized it to generally engage in the hotel business it did not actually do so but confined its business to the operation of the St. Anthony Hotel. As we construe this record it was never in the contemplation of the parties that the corporation was to be formed for any other purpose; hence the earnings of the corporation were intended to be and actually are identical with the earnings of the lessee.

Appellant also contends that there is a difference between the provisions of the lease and charter regarding the method to be employed by the accountants in determining the option price of the stock, appellant contending that in arriving at the "fair value" of assets the books of the company, under the lease, are conclusive whereas under the charter, as appellees contend, the opinion of the auditors is conclusive.

We cannot agree with appellant's construction. Both the lease and the charter provide that the assets shall be given a "fair value." Such value may or may not coincide with book value. If book value had been intended the parties would, it seems, not have used the term "fair value."

Paragraph 6 of the lease merely identifies the auditors, provides for their replacement and treats of regular monthly and annual audits. It is our opinion that "fair value" in the charter has the same meaning as "fair value" in the lease.

Appellant's second and third points are to the effect that the determination of the option price by the auditors was not final and it having been established by pleadings, affidavits and exhibits that such determination was incorrect as a matter of law or, at least, factually issuable that the court erred in granting appellees a summary judgment.

Appellant put in the record the affidavit of G. R. Donnell, a certified public accountant, which stated that after examining numerous pertinent documents and accounts that option purchase price of appel-

lant's stock was $257,000 and that the tendered dividends check was also insufficient. The difference between such calculations and the amounts offered is due to different treatment of various items such as the failure of accountants George, Thrift & Cockrell to include as assets or as available for dividends certain china and glassware, an anticipated income tax refund, prepaid promotional expenses incurred in the purchase of a Grand Champion steer for advertising purposes and the treatment accorded expense items amounting to more than $35,000 composed of "officers' salaries; Directors' fees; Interest on non current account, Pan American Hotel Company; and Professional expense." The aggregate of these last items was deducted as an expense of the Hotel in determining the option purchase price but was not treated as "operating expenses" of the Hotel in calculating the rents due Pan American under paragraph 3(a) of the lease and operating agreement.

We will confine our discussion here to the question of whether the finding of the Hotel auditors is final and binding upon the parties in the absence of fraud or obvious mistake. In our opinion it is. The controlling authority is City of San Antonio v. McKenzie Constr. Co., 136 Tex. 315, 150 S.W.2d 989, 995.

The construction contract in that case provided that the engineer should "'in all cases decide every question which may arise relative to the execution of this contract on the part of said Contractor.'" The contract did not by express language provide that the decision of the engineer should be final but the Court, nevertheless, held it to be final and used this language which is appropriate here:

"When parties to a building contract agree to submit questions which may arise thereunder to the decision of the engineer, his decision is final and conclusive; unless in making it he is guilty of fraud, misconduct, or such gross mistake as would imply bad faith or failure to exercise an honest judgment. Galveston, H. & S. A. Ry.

Co. v. Henry & Dilley, 65 Tex. 685; 4 Tex.Jur. p. 709, sec. 4, and authorities there cited. Under this rule it would be hard to define the exact character or quantum of proof required to show that an umpire or arbitrator has been guilty of fraud, misconduct, or gross mistake. However, it certainly can be said that when an engineer is called on to make a decision under a construction contract such as this his decision cannot be set aside for fraud, misconduct, or gross mistake, simply by proving that some other engineer would have acted differently or given a different decision. Also, we think an engineer's decision under a contract like this cannot be impeached simply on a conflict of evidence as to what he ought to have decided. This must be true, because any other rule would simply leave the matter open for a court or jury to substitute its judgment and discretion for 'the judgment and discretion of the engineer; and such a procedure or rule would practically nullify the arbitration or umpire agreement. The decision of an engineer or architect under a contract like this is presumed to be correct, and to have been given while acting within the scope of his authority. 4 Tex.Jur. p. 711, § 5.

"Generally speaking, an award of arbitrators upon matters submitted to them is given the same effect as the judgment of a court of last resort. All reasonable presumptions are indulged in favor of the award, and none against it. The courts will not overthrow an award such as this, except in a very clear case."

See also Aitchison v. Anderson, 9 Cir., 183 F.2d 922, an auditing case.

Appellant relied primarily upon the case of Black v. Acers, Tex.Civ.App.Dallas, 178 S.W.2d 152, writ ref. The contract there was that certain construction was to "meet requirements of the Federal Housing Administration." The contract did not give any person authority to determine compli-

ance with these requirements and we think that the Court there correctly held that the officials of the Federal Agency were not vested with contractual authority to finally determine these matters.

■ The contract here does not in so many words provide that the auditor's determination of the option price shall be final but we believe that such is the necessary implication of the agreement which, by its terms, was to be consummated within a period of thirty days. This would be a practical impossibility if the stockholder, as here, should resist and be unwilling to assist in the enforcement of the option. We cannot assume that these astute business men aided by eminent attorneys would draw an option agreement involving the outlay of a half million dollars and the management of the St. Anthony Hotel for the next quarter of a century that was impossible. or impractical of performance.

Appellant's fourth point is that the tender of the option price by Pan American was made upon unauthorized conditions. This tender has been copied above in full. It is conditional, appellant says, because it calls for delivery of appellant's stock, properly endorsed "and to be in full satisfaction of your rights and claims as a Class B stockholder," and because the tender itself admits that appellant had unsatisfied claims relating to china and glassware on hand and an anticipated income tax refund of $15,000.

■ The incidents of stock ownership in a corporation are the rights, protanto, to share in its management, profits and, upon dissolution, its assets. Thompson on Corporations, 3rd Ed. Vol. 5, p. 305. The surrender of these privileges is all, as we construe it, that the language of the tender required of appellant. The present point is overruled, however we reserve for discussion under appellant's tenth and final point the effect of statements made in the tender concerning the china and glassware and income tax refund and other claims of appellant.

The fifth point made by appellant is that the judgment in the nature of specific performance is erroneous because the record shows, as a matter of law, that neither the Hotel Corporation nor Pan American had paid appellant dividends on his stock as required by the lease-operating agreement and the charter of the corporation.

■ The question of dividends was severed in the court below for separate trial and appellant did not complain there and does not complain here that such severance was erroneous or prejudicial and such question is not before us and we make no speculation concerning it.

Points six and seven question the validity of the option agreement on the ground that it violates the rule against perpetuities and is an invalid restraint upon the alienation of the stock owned by appellant.

In our opinion these rules are inapplicable to the facts reflected by this record. The subject matter of this controversy is the St Anthony Hotel and the lease and operating agreement pertaining thereto. Appellant, owning no part of the Hotel, had an interest in the lease and operating agreement through ownership of stock in the Hotel Corporation whose only asset was the lease and agreement and profits accruing therefrom. Stripped of the lease the Hotel Corporation was functionless and its stock worthless.

The history of this controversy demonstrates beyond question that Pan American which owned the St. Anthony and was in turn owned by Mr. R. W. Morrison, was never willing to completely surrender control of the Hotel to appellant and his associates for an extended period of time. This is evidenced by Mr. R. W. Morrison's ownership of 60% of the stock in the first operating company and by the cancellation provision in the 1946 lease and by the so-called stock purchase option in the current lease. The effect of these various provisions was that Mr. Morrison or Pan American could resume control of the Hotel without waiting for the lease term to expire. In the current lease there are

numerous grounds upon which Pan American could cancel the lease without penalty and the stock purchase option is, as we construe it, merely a method of or device for cancelling the lease but with the penalty therein stated. This interpretation is not only warranted but we believe demanded by the provisions of the compromise agreement of December 1, 1948, copied above, which preserved the cancellation provision of the 1946 lease except that it was to be ineffective for a three-year period.

▪ The formation of the Hotel Corporation was but a procedural step in implementing the compromise agreement and in our opinion it would be palpable injustice to permit the attributes of corporate entity to attach to this stock purchase option so as to enable appellant to repudiate an unsatisfactory portion of a contract which was most generous in his behalf. To prevent such injustice the corporate entity is disregarded. First National Bank in Canyon v. Gamble, 134 Tex. 112, 132 S.W.2d 100, 125 A.L.R. 265.

Appellant's eighth and ninth points are that the record raises issues of fact regarding performance or nonperformance of Pan American's duty and obligation, as majority stockholder in the Hotel Corporation, towards appellant as a minority stockholder and that such breaches, if established upon trial, would prevent the court from decreeing Pan American specific performance of the stock purchase option.

These points present as a factual question virtually the same question presented under Point Five, but there as a matter of law.

All of the matters mentioned by appellant under these points are collateral to the issue of ownership of the stock in question, the only ultimate issue before us. We do not believe it necessary or proper that we determine a series of conflicts between appellant and Pan American in order to dispose of the case before us. We refer to our discussion under Point Five insofar as applicable here and overrule Points 8 and 9.

The final point is that even though the determination of the option price by the accountants was prima facie correct, the record reflects that such determination was fraudulent, arbitrary or the result of gross mistake.

In two respects we agree with appellant that the accountants committed gross mistakes in determining the option price of appellant's stock—in failing to find the fair value of the china and glassware and in failing to consider the income tax refund.

On the same date that such accountants reported on the option price of appellant's stock they approved an inventory of the Hotel fixing the value of this china and glassware at $14,325.78, cost value and an additional $12,579.45 if given market value.

We understand from the record that the liquidated value of the income tax refund is $15,000.

As a matter of fact Pan American in its letter of March 28, 1952, to appellant recognized the validity of these items and offered to enter into a contract with appellant to account for them in the future which offer appellant rejected. We understand from appellees' brief that Pan American stands ready to tender appellant such additional amount as may be required to comply with the terms of the option.

▪ We disagree with appellant regarding so-called prepaid promotional expenses incurred in the purchase of the Grand Champion steer. The steer itself, as we understand it, is not in controversy. Apparently it has been consumed. What remains from the expenditure is good will which, in our opinion, is not an asset within the meaning of the option. In any event it was not a gross mistake or evidence of fraud on the part of the accountants to fail to take it into consideration in fixing the option price.

We reach the same conclusion regarding the $35,000 claim for officers' salaries, directors' fees and other items mentioned under Points 2 and 3, above. Appellant's point here is that these items were not treated as "operating expenses" in calculating the

rents due Pan American under paragraph 3(a) of the lease but were deducted as expenses under the option agreement the effect of which was to lower the net profits and the option price but to increase the rents paid Pan American.

We do not determine whether under paragraph 3(a) of the lease Pan American was overpaid rents as that question is not before us. We note, however, that the provisions of 3(a) are not the same as those of the option which are "the average net annual earnings of the corporation (lessee) before income taxes."

It was not, in our opinion, unreasonable, fraudulent or a gross mistake for the accountants to conclude that only income taxes were nondeductible expenses under the option.

The judgment of the trial court will be reformed by adding to the option price of appellant's stock his proportionate part of the market value of the surplus china and glassware ($26,905.23) and of the $15,000 income tax refund and as reformed the judgment of the trial court will be affirmed. The final entry of such judgment is conditioned upon proper showing in this Court, within 10 days from this date, by Pan American that it has made a valid tender to appellant of the additional amount due him, otherwise the cause will be reversed.

Reformed and affirmed upon condition.

Supplemental Opinion

Appellees Pan American Hotel Company and the Trustees of the Morrison Trust having fully complied with the terms upon which we conditioned affirmance of this cause as shown in our opinion delivered January 5, 1955, it is ordered that the judgment of the trial court be reformed by adding the sum of $20,952.62 to the amount therein adjudged to be paid appellant upon delivery of the stock therein described and as reformed the judgment of the trial court is affirmed.

Reformed and affirmed.