R. E. MORRISON, Appellant,

v.

The ST. ANTHONY HOTEL, SAN ANTONIO, Texas, et al., Appellees

No. 13017.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 12, 1956.

Rehearing Denied Nov. 6, 1956.

Davis, Clemens, Knight & Weiss, Ernest W. Clemens, George H. Spencer, San Antonio, for appellant.

Carl Wright Johnson, Dodson, Duke, Branch & Davis, San Antonio, P. H. Swearingen, Jr., San Antonio, for appellees.

POPE, Justice.

R. E. Morrison, a former stockholder in The St. Anthony Hotel, has appealed from an order dismissing his suit against The St. Anthony Hotel, its directors, and the Pan American Hotel Company, which owned the majority of the stock of The St. Anthony. The trial court sustained a plea of res judicata and a special exception which stated that plaintiff had failed to assert a cause of action. Morrison sued upon a contract

by which he claims a right to recover dividends. He also sued for damages which he claims he individually suffered by reason of certain mismanagement practices and a breach of trust on the part of the majority stockholder, which conduct resulted in depressing his dividends and stock values. By a former trial and appeal, the issues of stock ownership and the value of the stock were decided. That former litigation was on those severed issues, and the court held that Pan American, rather than Morrison, owned the stock in question. Morrison v. St. Anthony Hotel, Tex.Civ.App., 274 S.W.2d 556, 558. Those issues were completely severed from the issues now presented. We shall first consider the court's holding that the issues here presented are barred by the plea of res adjudicata. We shall then consider whether Morrison, no longer the owner of the stock, is denied a suit for dividends under his agreement with the defendants, and whether he is denied an action for damages for mismanagement. The judgment is reversed and the cause is remanded.

In 1948 Morrison and Pan American were engaged in another suit, which they settled by executing a written agreement. The nature of that settlement and much of the history of this present suit are stated in detail in Morrison v. St. Anthony Hotel, supra. In 1948, and at all times since, Pan American was the owner of all the physical properties of The St. Anthony Hotel. By the terms of the settlement agreement Morrison and others formed a separate corporation known as The St. Anthony Hotel, San Antonio, Texas, for the purpose of operating the hotel. Pan American owned fifty-two percent of the stock in the new corporation and Morrison and others owned the balance. Pan American made a new lease of the hotel properties to the new operating company. By the terms of the settlement agreement, the owners of the minority stock in The St. Anthony Hotel were to receive all the net earnings or dividends of the new corporation up to $130,000. The agreement was carried forward and was expressly written into the charter of The St. Anthony Hotel. The stock certificates also carried forward the agreement by printing on their face:

" * * * and the directors of the corporation shall be required to declare and pay each year to the stockholders, as herein provided, all net earnings of the corporation for said year, commencing with the year ending January 31, 1950, within a reasonable time after the close of each fiscal year after the accounts and financial conditions of the company have been audited by Certified Public Accountants, and the net profits for the year have been determined * * *."

The 1948 settlement agreement further provided that Pan American, the dominant stockholder, would have a continuing option to purchase the minority stock. Upon the exercise of that option, value would be determined by the company auditor, who was designated as the sole arbiter. He would compute a sum of money equal to three times the average net annual earnings of The St. Anthony Hotel, before taxes, during the three years next preceding the exercise of the option. This phase of the 1948 agreement was also reflected in the charter of The St. Anthony Hotel and on the face of the stock certificates.

In 1952, Pan American exercised its option to buy the minority stock and called upon the auditor to determine the value of the stock, as contemplated by the settlement agreement, the charter and stock certificates. Morrison then filed suit. He claimed ownership of the stock despite the exercise of the option and also claimed that he was entitled to the net earnings in the form of undeclared dividends in The St. Anthony up to the exercise of the option. He also claimed damages for mismanagement by the majority stockholder to its own profit, and the malicious depression by it of his dividends and stock values. To Morri-

son's suit, defendants filed a motion to sever, so the stock ownership issue could be separately tried. The trial court granted the motion. The issue of ownership of the stock was completely severed, and Pan American was declared the owner of the stock. Morrison v. St. Anthony Hotel, supra. Defendants rely upon that trial as res judicata of all issues.

■ The ownership of the stock and its value were the controlling and only issues before the court in the former severed action. The order of severance decreed that the motion of The St. Anthony Hotel "for the separate trial of said ownership of 1200 shares of Class B stock in the St. Anthony Hotel, be * * * granted, and that said issue shall be separately determined before the trial of other issues in this cause * *."

The order further decreed "that the request of plaintiff (Morrison) for production of audit reports of the defendant The St. Anthony Hotel be, and the same is hereby held in abeyance and postponed until after the determination of said issue of ownership of said 1200 shares of Class B stock in The St. Anthony Hotel." The opinion of the Court of Civil Appeals also recognized the singleness of the issue and said: "The trial court severed the issues relating to ownership of the stock from other issues in the case and tried only the stock ownership issues." The Court of Civil Appeals, because of the severance order, refused to give consideration to any issues apart from the stock ownership issue. It expressly refused to pass upon the question of dividends, saying: "The question of dividends was severed in the court below for separate trial and appellant did not complain there and does not complain here that such severance was erroneous or prejudicial and such question is not before us and we make no speculation concerning it." Speaking of certain other issues, the Court of Civil Appeals stated: "All of the matters mentioned by appellant [Morrison] under these points are collateral to the issue of ownership of the stock in question, the only ultimate is-

sue before us." The order of the trial court and the opinion of the Court of Civil Appeals expressly saved the dividend and damage issues for a later trial.

We, therefore, have Morrison, in the trial of the ownership phase of this suit, endeavoring to raise issues which would show he had not received dividends in line with the 1948 settlement, the charter and his stock certificates; and also trying to show that his agreement was so violated that he was damaged by the mismanagement of the majority stockholder. Each time Morrison tried to litigate these matters he was told that the narrow issue of stock ownership excluded all consideration of those collateral issues. Morrison is now before this Court on those issues and is faced with the defense that they were already decided by the former suit. If Morrison has no rights it is not because he has already had his day in court. The Austin Court of Civil Appeals expressly stated its refusal to consider the issues here presented, because they were collateral to the severed and single issue of ownership.

Stock ownership was an issue between Morrison and Pan American. They were parties to the severed appeal, but The St. Anthony was not. Therefore, the former appeal is not res judicata and the appellees' plea should have been overruled.

The trial court sustained an exception to Morrison's claimed cause of action for dividends and damages. The special exception suggests several objections to the sufficiency of the pleadings. Does a stockholder have any rights to dividends prior to the time they are declared? Does a stockholder have any rights incident to the stock after the exercise of an option to buy his stock? Does a former stockholder, independent of the corporation's rights to redress damage, individually have an action against the majority stockholder for breach of its trust toward the minority stockholder for mismanagement and the malicious refusal to declare dividends and suppress stock values? The answer to the first two questions is or-

dinarily in the negative but there are exceptions to the rule. In passing upon the validity of the special exception, we shall consider as true the pleadings and the facts disclosed in Morrison v. St. Anthony Hotel, supra.

■ This litigation arose out of a former settlement agreement. The 1948 settlement gave Morrison and the other minority stockholders two things—all dividends in the operating company up to $130,000, and the ownership of stock until Pan American exercised its option. On the basis of that contract, the parties did not contemplate that the exercise of the option would wipe out Morrison's rights to net earnings. The agreement was embodied in the stock certificates and they clearly stated on their face that the directors "shall be required to declare and pay each year * * * all net earnings of the corporation." In Morrison v. St. Anthony Hotel, Tex.Civ.App., 274 S.W.2d 556, 565, 568, the Court held that the objective of the parties to this transaction must be determined from a consideration of all documents, including the original 1948 settlement, the new lease, the charter and the stock certificates. The Court looked through the corporate entity to discern the objective sought by the 1948 settlement, and then gave it effect, saying: "The formation of the Hotel Corporation was but a procedural step in implementing the compromise agreement and in our opinion it would be palpable injustice to permit the attributes of corporate entity to attach to this stock purchase option so as to enable appellant to repudiate an unsatisfactory portion of a contract * * *." For the same reason, when we turn to the separate matter of the net earnings of the operating company, we should look upon the arrangement in like manner. Under the contract, Morrison and the other minority stockholders were entitled to all dividends, declared or undeclared, which, from the pleadings, were not paid to them. This is enough to dispose of the case concerning Morrison's suit for dividends or net earnings, but we shall also discuss the rights

of minority stockholders apart from the objectives intended by the 1948 settlement agreement and as interpreted in Morrison v. St. Anthony Hotel, supra.

■ Generally, it is the corporation and not the stockholders which must redress wrongs which weaken corporate values. But in a proper case, where a majority stockholder has abused its discretion and has maliciously suppressed the payment of dividends, a stockholder may assert a cause of action for damages and may compel the declaration of dividends. Patton v. Nicholas, 154 Tex. 385, 279 S.W.2d 848; Warburton v. John Wanamaker Philadelphia, 329 Pa. 5, 196 A. 506; Lydia E. Pinkham Medicine Co. v. Gove, 303 Mass. 1, 20 N.E.2d 482, 490; Crocker v. Waltham Watch Co., 315 Mass. 397, 53 N.E.2d 230, 234; New England Trust Co. v. Penobscot Chemical Fibre Co., 142 Me. 286, 50 A.2d 188; W. Q. O'Neall Co. v. O'Neall, 108 Ind.App. 116, 25 N.E.2d 656; Burk v. Ottawa Gas & Electric Co., 87 Kan. 6, 123 P. 857; Patterson v. Durham Hosiery Mills, 214 N.C. 806, 200 S.E. 906.

■ We also recognize the settled general rule that dividends ordinarily pass with and are incident to stock transfers. But here, too, there is an exception in the proper case. Under certain circumstances, not only stockholders, but former stockholders, may assert an action for their own damages. "The general rule does not prevent stockholders from suing to restrain, or recover damages for, wrongful acts which are not only wrongs against the corporation but also violations of duties arising from contracts or otherwise and owing directly to the injured stockholders". 18 C.J.S., Corporations, § 559; 14 C.J., Corporations, § 1445. "Management of the corporation by those in control, for their own interest or profit, to the exclusion of minority stockholders, is ground for relief. Mismanagement of the corporation, by those in charge, for the purpose of depressing the value of the stock of minority stockholders, so as to cause them to either

surrender the stock or sell it at a sacrifice, is actionable." 13 Fletcher Cyclopedia, Corporations (Perm. Ed.), § 5841. Texas recognizes this exception to the general rule. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, 222; Stinnett v. Paramount-Famous Lasky Corporation, Tex.Com.App., 37 S.W.2d 145, 150. See also, Funk v. Spalding, 74 Ariz. 219, 246 P.2d 184; Sutter v. General Petroleum Corporation, 28 Cal.2d 525, 170 P.2d 898, 901, 167 A.L.R. 211; Peter v. Western Newspaper Union, 5 Cir., 200 F.2d 867, 872.

■ In Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp., 84 U.S.App.D.C. 275, 173 F.2d 416, which was brought by stockholders against the management officers, Noyes on Intercorporate Relations, 2d Ed. (1909), § 300, is quoted concerning the duty of corporations, such as Pan American in this case, which own controlling stock in a subsidiary corporation. Their duty is one of trust and strong presumptions come into force against the management which pays itself enormous management fees and refuses to pay dividends. Noyes is quoted:

.· "When a majority of the stock of one corporation is owned by another, which thereby acquires the right to control its management, the controlling corporation assumes a relation of trust towards the minority stockholders of the corporation controlled, and is under an obligation to manage its affairs for the benefit of all the stockholders and not for its own aggrandizement. This is merely an application of the principle that, while a majority of the stockholders may legally control the corporation's business, they assume the correlative duty of good faith, and cannot manipulate such business in their own interest to the injury of minority stockholders."

In Macgill v. Macgill, 135 Md. 384, 109 A. 72, the controlling stockholders exercised their option rights to retire preferred stock at the price its contract permitted. Prior to the exercise of the option, the majority interest induced the minority to surrender its common stock. Dividends on common stock had not been declared to cover the full profits, there being a balance of $48,064.68 after declaring only a four per cent dividend. After the common stock was thus surrendered, the company made tremendous profits, which, together with the credit balance above stated, exceeded $360,000. Though the plaintiff had surrendered its common stock and lost its preferred stock on the exercise of the option, the stockholders still had a cause of action against the majority stockholders. The case holds that one who has parted with his stock may yet recover dividends which were undeclared when surrendered in a suit against a majority who breached their fiduciary trust by wrongfully inducing stockholders to part with their shares. In Hotchkiss v. Fischer, 136 Kan. 530, 16 P.2d 531, a former stockholder was similarly protected.

In Zahn v. Transamerica Corporation, D.C., 63 F.Supp. 243, facts similar to the instant case are stated. The plaintiff, upon the exercise of an option by the majority, surrendered all but twenty shares of his stock in Axton-Fisher Co. and received the agreed redemption price. He later sued the Transamerica Corporation, which owned the controlling stock in Axton-Fisher Co., for inducing Axton-Fisher to exercise its option in such a manner as to defeat the stockholder's rights to share in a liquidation and merger which was then contemplated. The District Court, in the opinion cited above, held, as did the trial court in this case, that the option to redeem was valid, and when it was exercised all rights incident to the stock were destroyed and the plaintiff thereafter had no rights. The District Court dismissed the suit.

On appeal, the Third Circuit Court of Appeals held that the plaintiff asserted

a cause of action against the majority stockholder which acted against the interests of the minority. In a well-considered opinion, the Court held that one corporation, which controlled another corporation through its directors, occupied a fiduciary relation toward the minority. In that case, the majority, in strict conformity to the pertinent statute and the powers granted by the corporate charter, exercised the power to call its stock at a stated price. Nevertheless, the dominant stockholder, in the exercise of that power could not breach its trust and profit at the expense of the minority. The plaintiff in that suit asserted a double action, one as a stockholder and the other as a non-stockholder who had already surrendered his stock. The court expressly held that plaintiff had a cause of action as an individual and despite his former surrender of stock. Because the directors of Axton-Fisher were named by Transamerica, and acted for the purpose of profiting Transamerica, their true principal, the plaintiff asserted a cause of action. "Liability which flows from the dereliction must be imposed upon Transamerica [Pan American] which under the allegations of the complaint, constituted the board of Axton Fisher [St. Anthony Hotel] and controlled it." Zahn v. Transamerica Corp., 162 F.2d 36, 46, 172 A.L.R. 495, 508. Other cases support the same view. Peter v. Western Newspaper Union, 5 Cir., 200 F.2d 867, 872; Soderstrom v. Kungsholm Baking Co., 7 Cir., 189 F.2d 1008; Lebold v. Inland Steel Co., 7 Cir., 125 F.2d 369; Eden v. Miller, 2 Cir., 37 F.2d 8; Ritchie v. McMullen, 6 Cir., 79 F. 522; Funk v. Spalding, 74 Ariz. 219, 246 P.2d 184; Hammer v. Werner, 239 App.Div. 38, 265 N.Y.S. 172; Von Au v. Magenheimer, 126 App.Div. 257, 110 N.Y.S. 629, affirmed 196 N.Y. 510, 89 N.E. 1114; Moroney v. Moroney, Tex.Com.App., 286 S.W. 167.

Morrison pleaded that The St. Anthony's controlled board of directors charged certain salaries and directors' fees against The St. Anthony when they, by agreement, should have been charged to Pan American; that at one time when earnings amounted to $131,000, the board declared dividends of $50,000, conditioned upon Morrison's written approval, failing which they told him they would declare only $40,000 dividends. He pleaded further that Pan American paid itself $95,863 out of operating cash for a debt which was not due until December, 1979. He alleged that the defendants maliciously mismanaged the corporation for the wrongful purpose of reducing the minority's earnings and to suppress their dividends. He also made other allegations.

■ Morrison asserted a cause of action against The St. Anthony Hotel and Pan American Hotel Company, both under the contract by which the minority would receive all net earnings of The St. Anthony Hotel and on the breach of trust theory for damages. The recovery, however, is a single recovery for an action which is asserted on two theories. A single recovery for loss of earnings is alleged. Morrison asserts that the same breaches of trust which depressed dividends also resulted in his receiving a less sum for his stock. Our understanding of the former severed appeal is that ownership of the stock and stock values were there determined. The Court of Civil Appeals corrected the trial court's judgment to include additional sums due Morrison—not for earnings but for stock values only. As the Court of Civil Appeals stated, the stock values were determinable by a named auditor, whose decision by agreement of the parties was deemed final, citing City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989.

Dividends and net earnings, unlike the matter of stock values, were not determinable by a named arbiter. Morrison asserted an action against The St. Anthony Hotel and Pan American Hotel Company

on the matter of dividends and net earnings.

The judgment is reversed and the cause remanded.

W. O. MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority. The suit as originally brought seemed to raise three main issues: (1) The right of Pan American Hotel Company to exercise its option to purchase the stock of the Class B stockholders, (2) the right of the Class B stockholders to recover dividends which they alleged should have been declared prior to the time Pan American Hotel Company exercised its option to purchase their stock, and (3) a claim for damages allegedly caused by breaches of fiduciary duties and mismanagement of the corporation. Apparently the trial court severed the issue of the right of Pan American Hotel Company to exercise its option to purchase the stock held by the Class B stockholders from the other issues in the case and then rendered a summary judgment holding that the option had been properly exercised and that appellees were the owners "of the legal and equitable title to the 1200 shares of Class 'B' stock in the St. Anthony Hotel, San Antonio, Texas." Appeal was taken from this summary judgment and it was affirmed, with certain amendments, by the Austin Court of Civil Appeals. Morrison v. St. Anthony Hotel, 274 S.W.2d 556, 558, writ refused N.R.E. Concerning this appeal, the Austin Court had this to say: "The trial court severed the issues relating to ownership of the stock from other issues in the case and tried only the stock ownership issues. This action of the trial court is unquestioned."

Ordinarily, a partial summary judgment is an interlocutory order and not appealable. City of San Antonio v. Castillo (City of San Antonio v. Kneupper), Tex.Civ.App., 285 S.W.2d 835; Myers v. Smitherman, Tex.Civ.App., 279 S.W.2d 173. The appeal to the Austin Court can only be upheld upon a theory that there was a complete severance of the cause of action as to who were the legal owners of the Class B stock. Richards v. Smith, Tex.Civ.App., 239 S.W. 2d 724; Biggins v. Oltmer Iron Works, 7 Cir., 154 F.2d 214; Zarati Steamship Co. v. Park Bridge Corp., 2 Cir., 154 F.2d 377.

When the first appeal of this case is considered in the above light, we must accept as fully adjudicated the question of the right of appellees to exercise their option and purchase the Class B stock, and thus the former owners of the Class B stock are no longer stockholders of any kind in the St. Anthony Hotel Company. Having arrived at this conclusion, it is my opinion that an ex-stockholder of the corporation has no right to maintain a suit for recovery of profits made by a corporation which should have been but were not declared to be dividends, nor may he maintain a suit for damages in lieu of such undeclared dividends. Blooming Grove Cotton Oil Co. v. First National Bank, Tex.Civ.App., 56 S.W. 552; Boardman v. Lake Shore & M. S. R. Co., 84 N.Y. 157; Jermain v. Lake Shore & M. S. R. Co., 91 N.Y. 483; Phelps v. Farmers' & Mechanics' Bank, 26 Conn. 269; March v. Eastern R. Co., 43 N.H. 515; Gemmell v. Davis, 75 Md. 546, 23 A. 1032, 32 Am.St.Rep. 412.

Likewise, I am of the opinion that appellant's suit for damages for alleged breaches of fiduciary duties and mismanagement cannot be maintained by appellant since he is not a stockholder, but an ex-stockholder of the corporation. Stinnett v. Paramount-Famous Laskey Corp., Tex. Com.App., 37 S.W.2d 145; Pollitz v. Gould, 202 N.Y. 11, 94 N.E. 1088, 38 A.L. R.,N.S., 988. Schmidt v. Schmidt, Tex. Civ.App., 52 S.W.2d 778; Bacon v. National Bank of Commerce, Tex.Civ.App., 259 S.W. 244.

I respectfully enter my dissent from the opinion of the majority.

On Motion for Rehearing.

POPE, Justice.

Appellees' motion for rehearing is overruled. Most of the motion is devoted to argument that the Austin Court of Civil Appeals has already passed on the matter of dividends that were owing to Morrison. The Austin Court expressly states the contrary [274 S.W.2d 567]: "The question of dividends was severed in the court below for separate trial and appellant did not complain there and does not complain here that such severance was erroneous or prejudicial and such question is not before us and we make no speculation concerning it."

Appellees urge also that the Austin Court has already awarded Morrison his dividends or earnings by requiring the additur of $20,952.62. Again, as the Austin Court states, that sum was added to "the option price of appellant's stock" as the value of certain omitted items in computing the stock value. The Court was concerned with the exercise of the option, stock values and ownership. The required tender was for the deficiency in the option price of stock and concerned stock value only. It did not concern dividends.

Morrison was entitled to two things, (1) dividends on his stock and (2) the value of the stock upon the exercise of the option. By agreement of the parties, the power to compute the value of the stock was vested in an auditor. The prescribed formula required him to multiply the average earnings by three. The Austin Court in passing on value, of course, looked to dividends under the formula for fixing stock values. But no court has ordered the payment of dividends as such. The Austin Court awarded Morrison his stock values computed on the dividend formula. Morrison's right to dividends is an entirely distinct matter which appellees confuse with stock values.